PEARL RIVER VALLEY WATER SUPPLY DISTRICT, APPELLANT
AND CROSS-APPELLEE *v.* MRS. HAZEL A. WOOD,
APPELLEE AND CROSS-APPELLANT

No. 42992 February 24, 1964 160 So. 2d 917

*Watkins, Pyle, Edwards & Ludlam, Robert H. Weaver,* Jackson, for appellant.

*Ray, Spivey & Cain,* Canton; *Lee, Moore & Countiss,* Jackson, for appellee.

PATTERSON, J.

The Pearl River Valley Water Supply District, appellant and cross-appellee here, filed suit to condemn

113 acres of land in Madison County owned by appellee and cross-appellant, Mrs. Hazel A. Wood. The land was sought by the District for the purposes hereinafter mentioned in connection with the construction and development of a reservoir and related facilities in accordance with authority granted the District by Chapter 197, Laws of 1958. Mrs. Hazel A. Wood, the owner, was made defendant in the eminent domain suit. Hereinafter the Pearl River Valley Water Supply District will be referred to as the District and Mrs. Hazel A. Wood will be referred to as the owner.

Before the condemnation suit was tried the owner filed in circuit court a petition for a writ of prohibition. In this petition reference was made to the eminent domain suit then pending appertaining to these lands. A temporary writ of prohibition was issued pending a hearing on the merits. Of the 113 acres originally sought by the District, 31.7 acres was for conveyance to the Department of Interior for the relocation of the Natchez Trace Parkway. Prior to the trial on the merits an agreed order was entered dismissing from litigation this 31.7 acres of the original 113 acres, leaving in controversy 82.1 acres. At the conclusion of the trial the circuit court, in a written opinion, found the north 42.1 acres of the 82.1 acre tract was needed by the District in order to have access by water underneath the relocated Natchez Trace for the purpose of establishing a marina or boat landing and to provide certain related facilities in connection therewith. Of this one-half, he found that 1.9 acres was below the 296 foot contour line and 5.6 acres was below the 300 foot contour line. He further found the remaining acreage was on high ground upon which was located the owner's home, the court specifically finding that there was no public necessity for the taking of this 40 acres of land upon which she resided.

In accordance with the court's opinion, an order was taken denying the writ of prohibition as to the 42.1

acres of land but making such writ permanent as to the 40 acres upon which the owner resided. From this opinion the District appeals as to the 40 acre tract and the owner cross-appeals as to the 42.1 acre tract.

The minutes of the Board of Directors of the District proclaiming the necessity for the condemnation of appellee's land was made an exhibit to the application in the eminent domain suit and was set forth in the answer to the petition for a writ of prohibition, being as follows:

"WHEREAS, this Board does now find and determine that a substantial portion of the lands hereinafter described as Parcel No. 651 is required by the United States of America, through its agency, the United States Park Service, for relocation of the Natchez Trace Parkway, necessitated by the construction of the Pearl River Reservoir, and that the remaining portion of said Parcel 651, all of which is located within the one-quarter mile from the outside line of the 300 foot above sea level contour on each side of Pearl River with other adjoining lands on the land side of the Natchez Trace Parkway, furnishes the only means of ingress and egress to and from the Reservoir in the approximate seven miles distance between Highway No. 43 and Greshams Bay; that said remaining portion of Parcel No. 651 will be connected with the main Reservoir by a boat passage structure under the Trace; that because of the location and needs of the Natchez Trace Parkway, suitable land available for access to the Reservoir in this area is very limited; that said portion of Parcel No. 651 is required to provide access facilities and accommodations for boating and fishing activities by the public, for use in connection with the harbor and marina development, for the control of the Reservoir and the protection of its water from pollution and such other uses as are authorized by law as specified herein and to the extent applicable to these lands specified in said Resolution

of this Board captioned 'General Policies of Land Acquisition'.''

The lands here in controversy are located on the west side of the 30;000 acre reservoir approximately four miles south of the intersection of Highway 43 and the Natchez Trace Parkway and approximately six miles north of the reservoir dam to the south. The entire tract lies west of the present Natchez Trace Parkway and will lie west of the Parkway upon its being relocated. On the west side of the reservoir between the lake and the dam, there are only about 753 acres for public use in connection with this reservoir. In the northern portion of the owner's property there is a creek which runs under the Natchez Trace. When the reservoir is flooded, this creek will become a cove or bay which the District plans to develop as a boat harbor with supporting facilities. This cove and boat harbor present the only place for access to the reservoir between Highway 43 and Gresham's Bay to the south, a distance of six or seven miles. The plans for the relocated Parkway provide for a bridge at this point with sufficient clearance to permit the passage of boats from the cove on the west side of the Parkway to the lake proper. The supporting facilities for the harbor will include picnic areas, trailer parks, space for tent camps and automobile parking spaces.

Due to scarcity of land on the east side of the Parkway, the District is seeking to acquire an additional 750 acres on the west or land side of the Parkway in the immediate vicinity of the four creeks or coves which pass under the Parkway. This 750 acres breaks down as follows: Beginning at the dam and proceeding north there are 162 acres in the vicinity of Walker Cove; 300 acres in the vicinity of Gresham's Cove; 270 acres in the vicinity of the Hazel Wood Cove, and north of Highway 43 in the vicinity of Williams Bay there is an additional 93 acres. These lands lie within one-

quarter of a mile of the outside of the 300 foot contour line.

The owner sharply contends this one-quarter of a mile strip from the outside of the 300 foot contour line does not apply to the small creek or tributary which crosses the northern end of the property here in question, since this is a tributary of the river and not the river itself; and, this being true, it was not authorized by Sec. 5956-61 of the Miss. Code of 1942, Rec., nor was it the intent of the legislature in this Act to include tributaries. The record reflects the present Natchez Trace Parkway is above the 300 foot contour line at this point, but that such line extends through and beyond a culvert under the Parkway.

The record discloses without doubt that the owner does reside upon the 40 acre tract to which the writ of prohibition was made permanent.

A county road presently intersects the southern extremity of the owner's property from the district's property to the south. Another county road extends from Highway 43 southward through the District's land to the north of the owner's property. The plans of the District are to extend the county road which lies to the south in a northerly direction, crossing the creek or bay, and on into the land owned by the District to the north, thence connecting with the entire existing county road system. The road system made possible by the acquisition of this land will roughly parallel the Parkway northward from the dam to Highway 43, and will provide access to the other reservoir properties from both north and south, as well as giving access to the coves between such highway and the dam, these coves, in turn, giving access by water to the lake proper.

Without the development of the cove on this land, the adjacent lands to the immediate north and south of the property here in litigation will afford no access to the lake by either automobile or boat, the District's

ownership on the lake side of the Parkway in this area being limited to a ten-foot strip between contour 296 and the Natchez Trace Parkway. Such strip is available to the District only for maintenance and control of the shoreline and cannot be used in connection with the related facilities of the boat marina and harbor. For all practical purposes, therefore, the western boundary of the reservoir at this location will be the Natchez Trace Parkway, over which the District has no control.

The projected statistics as to the usage, facilities needed, etc., are related in detail in the case of Pearl River Valley Water Supply District v. Brown, 156 So. 2d 572. They are applicable here and will not be repeated for brevity. The testimony further shows that final plans for use of these lands could not be made until the District determined with finality what lands it would have available to it for the overall purposes of the reservoir.

The questions presented for the Court to determine by the appeal and cross-appeal are: (1) Is the District required in proceedings for a writ of prohibition to prove that the land of a residential householder is absolutely necessary for the purposes of the reservoir project, and (2) does the acquisition of land for access to the reservoir, control of the shoreline, pollution control of the reservoir waters, and the construction of recreational facilities such as boat harbors and supporting facilities, constitute uses which are public, and (3) is the District required to have definite and complete plans for roads and other developments which are to be placed on the land site?

The primary question presented on cross-appeal, the other questions raised thereby being so closely related to the former questions hereinabove set forth that there is no necessity to here outline them, is whether the trial court erred in allowing the appellant to put on testimony with reference to the 42.1 acre tract of the

owner which was shown to be acquired by measuring outward from the 300 foot above sea level contour line which ran through the culvert under the Parkway and up the thread of a small intermittent stream that flows into Pearl River, and was not, therefore, within a quarter of a mile of the 300 foot contour line of the river proper. In derogation it is charged of Sec. 17 of the Mississippi Constitution and the Fourteenth Amendment to the Constitution of the United States.

The Court will address itself to the last question first, as it is apparent that if the District had no authority to take from the 300 foot contour line outward a distance of one-quarter of a mile from the creek or tributary, then the other questions would not come into being over a large portion of the 42.1 acre tract. The testimony of the engineers both for the owner and the District showed the 300 foot contour line to be correctly depicted upon the exhibits introduced. The testimony further shows that such line was correctly established beneath and beyond the Natchez Trace Parkway even though the same ran beneath and through this Parkway via a culvert. One of the engineers testified that this contour line is nothing more than a present location of the water line of the reservoir when it is filled to a level of 300 feet above sea. This water will, of course, seek its own level and in so doing will obviously flow through the culvert beneath the Natchez Trace Parkway and up the thread of the intermittent stream. This line will be smooth and symetrical only if the terrain is smooth and symetrical. It will be irregular and uneven if the terrain varies. The cross-appellant's contention that the line should be symetrical is not well taken for the obvious reason that a contour line is not subject to movement or variation according to the whim or desire of a landowner or engineer, but rather is an actual measurement of the distance between a particular place and sea level. It is, therefore, the Court's opinion

that the contour line is properly established along this tributary and that the District had the right to take outward therefrom a distance of one-quarter of a mile, and that such taking does no violence to Section 5956-61, or the legislative intent by so doing.

Section 5956-61(f), Miss. Code of 1942, Rec., is as follows: ''To acquire by condemnation any and all property of any kind, real, personal or mixed, or any interest therein, within the project area not exceeding one-quarter mile from the outside line of the 300 foot above sea level contour on each side of Pearl River except as provided for rights of way under Subsection (g) of this section, within or without the boundaries of the District necessary for the project and the exercise of the powers, rights, privileges and functions conferred upon the District by this Act, according to the procedure provided by law for the condemnation of lands or other property taken for rights of way or other purposes by railroads, telephone or telegraph companies. . . .''

The owner cites no case in law or argument in logic to the contrary.

The first question on direct appeal for our decision is whether the District is required in a proceeding for a writ of prohibition to prove the land of a residential householder is absolutely necessary for the purposes of the reservoir project before it can be condemned. Pearl River Valley Water Supply District v. Brown, supra, is directly in point here and decisive of this issue. ██ █ It is therein stated clearly and without equivocation that the question of public use is always a judicial question and that public necessity for a taking is essentially a legislative question. ██ █ The burden of proof is on the landowner who seeks to show lack of necessity, ██ █ the rule being as to whether the taking is necessary is within the discretion of the condemnor and the courts will interfere with the exercise of such discretion only

when abuse of discretion or fraud is shown. The record here, as there, is devoid of any proof or showing of any kind that the District abused its discretion in seeking to condemn the owner's land. No fraud, actual or legal, is shown or implied by cross-appellant. ■■ ■ The trial court erred as a matter of law in requiring the appellant to show the land is absolutely necessary for the purposes of the project, it being the land of a resident householder.

This error apparently arose because the circuit judge erroneously applied the homestead provisions of the act as requiring public necessity to be shown clearly and without a doubt. See *District v. Brown,* supra, which the trial court did not have before it as it was not at that time decided. We hold, therefore, that the lower court erred in this regard.

■■ ■ The second question for decision on direct appeal is: Does the acquisition of land for (a) access to the reservoir, (b) control of the shoreline, (c) pollution control of the reservoir waters, and (d) the construction of recreational facilities such as boat harbors and supporting facilities constitute uses which are public?

Again this question has been decided under similar facts in *District v. Brown,* supra, wherein it is stated: "As far as appellee's land is concerned, there are three primary public uses, control of pollution, control of access to the reservoir, and to provide recreation. All of these uses pertain to the reservoir and to contend that these uses are not public is to contend that the reservoir itself is not a public use of the lands covered thereby."

■■ ■ Appellee and cross-appellant contends heartily that this does not apply here for the reason the Natchez Trace Parkway lies between the lands herein sought to be condemned and the reservoir itself and that for this reason the question of pollution does not here come into being. Assuming, but not deciding, this to be true,

there remain two primary public uses — control of access to the reservoir and provision for recreational facilities — which are so closely related to the reservoir in its entirety that this Court is constrained to hold in view of *Brown* that the uses here in question are public.

 █ The third question for our decision on both appeals is whether the District is required to have definite and complete plans for roads and other developments which are to be placed thereon before eminent domain proceedings can be successfully instituted. Once again this is controlled by *Brown,* and is answered in the negative. The resolution is copied in another part of this opinion. It indicates the uses to be made of the owner's land, but neither the resolution nor the proof show any final plans specifically indicating what use is to be made of any particular part thereof. In accord with the cited case, we are of the opinion that appellee's argument is not well taken. The proof indicates that all of said land will be used for control of access to the reservoir and to provide public recreation. As heretofore stated, this alone is sufficient to meet the requirements of the law on the question of public use. In addition, the parking spaces, camp sites, parks and other such facilities are also for public use. ''It is unreasonable and unnecessary to require the condemnor for such public uses to include in the resolution and show by proof final plans for every part of the land taken. Such a rigid requirement would imply that no changes could ever be made in the various public uses as time and circumstances might require. It would also imply that no change in plans or use could ever be made. So long as public use is shown, detail plans are not required.'' *Brown,* supra.

We are of the opinion, and so hold, there exists no legal or factual basis for the issuance of a writ of prohibition in this case. On direct appeal, the case is reversed, the writ of prohibition is dissolved, the judg-

ment is entered here dismissing the petition. The case is affirmed on cross-appeal.

Reversed on direct appeal; writ of prohibition dissolved; affirmed on cross-appeal.

*Kyle, P. J., and Ethridge, Gillespie and Brady, JJ.,* concur.