BROWN, et al. *v.*
PEARL RIVER VALLEY WATER SUPPLY DISTRICT

No. 43046          May 11, 1964          163 So. 2d 732

698

*Lee, Moore & Countiss*, Jackson; *J. P. Coleman, W. D. Coleman*, Ackerman, for appellants.

*Watkins, Pyle, Edwards & Ludlam, Clifford C. Chittim*, Jackson, for appellee.

McElroy, J.

The three writ of prohibition proceedings presented to this Court for review in this appeal were consolidated for trial upon stipulation of the respective parties and with the approval of the trial court. In the same stipulation the parties agreed to incorporate in this record the testimony and exhibits offered and admitted in evi-

dence in the companion case, J. Leland Brown and Mrs. Amie Brown v. The Special Court of Eminent Domain of Madison County, Mississippi, reviewed by this Court and published in 156 So. 2d 572 (1963).

The four Brown cases — the three here reviewed (Nos. 664, 665, 666, Madison County, Miss.) and the companion case reviewed by this Court, Pearl River Valley Water Supply District v. Brown, supra — involve the authority of the Pearl River Valley Water Supply District to condemn a total of 630.2 acres which had been and were at the time of the trial operated as a single farming unit. The father, Floyd T. Brown, owned all of this land until April 1960. At that time he conveyed 44.3 acres, more or less, to one son, J. Leland Brown, and 549.2 acres, more or less, to another son, F. Stanton Brown, and retained in his own name 204.1 acres, more or less. Shortly thereafter J. Leland Brown conveyed to his wife, Mrs. Amie Brown, ten of the acres conveyed to him by his father.

The Pearl River Valley Water Supply District, by a resolution spread upon its minutes, determined the necessity for the condemnation of the lands owned by the Browns and authorized the filing of condemnation suits for the acquisition of these lands.

Proper resolution of the Brown land in the cases stated above found and determined it was located below the 300 foot above sea level contour, stating that the remainder of the land was located within one-quarter mile from the outside line of the 300 foot above sea level contour on each side of the Pearl River; that the lands are necessary for construction and maintenance of the reservoir, for the recreational development of the shoreline, to provide access to the reservoir and its shoreline, and other purposes as provided by the statute. The resolution further stated that the only interchange connecting the Natchez Trace Parkway with the Pearl River Reservoir is located immediately ad-

jacent and contiguous to the lands; that part of the lands are required for the relocation of the Natchez Trace Parkway itself; that many persons will come from the Natchez Trace Parkway and will need public access and public accommodations here; . . . that a public park and public facilities such as boat launching facilities, picnic facilities, restaurant facilities and motel facilities will be required on the lands.

The objections and assignments of error filed by the appellant, with the exception of one which will be considered below, have been decided in Culley v. Pearl River Industrial Comm., 234 Miss. 788, 108 So. 2d 390; Pearl River Valley Water Supply District v. Wood, 160 So. 2d 917 (Miss. 1964); and Horne v. Pearl River Valley Water Supply District, No. 42,919 decided April 6, 1964. In Horne v. Pearl River Valley Water Supply District, supra, the Court stated:

"It is the opinion of this Court that all points in issue here were decided in the cases of Culley v. Pearl River Industrial Commission, supra, and Pearl River Valley Water Supply District v. Brown, supra, wherein we held (1) the act authorizing the creation of the Water Supply District was constitutional; (2) whether there is a public necessity for a taking is essentially a legislative question; (3) the question of public use is always a judicial question; (4) that final plans indicating exactly what specific use is to be made of particular portions of land is not necessary prior to their condemnation; and (5) that the paramount and primary use of this land within the one-quarter of a mile from the outside of the 300 foot contour line is for pollution control, public access, and the development of recreational facilities, and that if incidental private use or benefit will result therefrom which would not of itself warrant the exercise of eminent domain powers, this incidental use will not defeat the paramount and primary public purpose of the condemnation."

■■ ■ We see no necessity of going into these points raised by the appellants. The circuit judge entered an order in the instant cases dissolving temporary writs of prohibition theretofore issued, but he included in the order the following: ". . . the Respondent, Pearl River Valley Water Supply District is hereby permanently enjoined and prohibited from ever using any part of said lands for restaurants, hotels, motels or other like facilities, . . . ." This was error, and that part of the order is reversed on the cross-appeal filed by the District in these cases.

As stated, all issues except one in this case have been settled against appellants. The one issue not heretofore presented is the statutory authority of the District to condemn 2.2 acres of land in fee for the relocation of the Natchez Trace Parkway. We hold that the district is authorized to acquire lands and fees within one-quarter mile limit for transfer to the United States for relocation of the Natchez Trace.

Subsection 5956-61(f) of Mississippi Code 1942, Rec., confers upon the District the authority to acquire by condemnation property or any interest therein "within the project area not exceeding one-quarter mile from the outside line of the 300 foot above sea level contour on each side of Pearl River except as provided for rights of way under Subsection (g) of this section, . . . necessary for the project and the exercise of the powers, rights, privileges and functions conferred upon the District by this Act, . . . ." In limiting the power of eminent domain thus conferred to "not exceeding one-quarter mile" the Legislature made an exception to that limitation, namely the acquisition of rights of way under Subsection (g). Subsection (f) continues: "For the purposes of carrying out this Act the right of eminent domain of such District shall . . . be sufficient to enable the acquisition of county roads, state highways or other public property in the project area and the acquisition,

or relocation of the above mentioned utility property in the project area; . . . ."

Subsection 5956-61(g) provides: "It is further provided that the District is hereby authorized to acquire easements or rights of way in or outside of the project area for the relocation of such roads, highways, railroads, telephone and telegraph lines and properties, electric power lines, gas pipe lines and mains and facilities and to convey the same to the owners thereof in connection with such relocation as a part of the construction of the project; . . . ."

██ █ The statute plainly contemplates and provides for the acquisition by condemnation of the fee for relocation of the Natchez Trace Parkway within the one-quarter mile limit, and the acquisition by condemnation of easements or rights of way for such relocation beyond the one-quarter mile limit.

Any other construction would render totally meaningless the word "lands" in section 5956-76 which empowers the District's board "to negotiate and contract with the United States of America, or any agency thereof, concerning all lands, easements and rights of way necessary for the relocation of any federal road, highway or parkway or for the facilities appurtenant thereto."

The Mississippi Legislature, in providing for the original Natchez Trace Parkway, authorized the conveyance of a fee to the United States. Subsection 6001(c) of Mississippi Code 1942, Rec., part of Laws of 1936, chapter 201, provides:

"(c) The state highway commission and the several counties through which the Trace is to run are hereby authorized to condemn right-of-way for said Trace on behalf of and in the name of the state of Mississippi, and as soon as the fee simple title, as above provided, vests in the state of Mississippi, the governor is hereby authorized to execute a conveyance by warranty deed

to the United States government of any such land so acquired.''

It is scarcely conceivable that the Mississippi Legislature expected to secure a relocation of the Natchez Trace, necessitated for the convenience of the state, by exchanging a lesser estate than that originally furnished.

We hold that the law authorizes the taking of this land by condemnation of the fee for relocation of the Natchez Trace Parkway within the one-quarter mile limit and the access by condemnation of assessment or rights of way for relocation beyond the one-quarter mile limit.

We are of the opinion and so hold that the learned circuit judge's order prohibiting the use of the land for hotels, motels, restaurants and other like facilities should be reversed, and in all other respects the case is affirmed.

Reversed in part; affirmed in part.

*Lee, C. J., and Ethridge, Gillespie and Brady, JJ.,* concur.