573 So.2d 736 (1990)
GOVERNOR'S OFFICE OF GENERAL SERVICES
v.
James CARTER, Jr., and Planters Bank and Trust Company.
No. 07-CA-59150.
Supreme Court of Mississippi.
December 19, 1990.
*737 Mike C. Moore, Atty. Gen., Robert L. Gibbs, Deputy Atty. Gen., Jackson, for appellant.
Willard L. McIlwain, Greenville, W. Dean Belk, Jr., Clark Davis & Belk, Indianola, for appellees.
Before HAWKINS, P.J., and ROBERTSON and BLASS, JJ.
HAWKINS, Presiding Justice, for the Court:
This is an appeal by the Governor's Office of General Services from an eminent domain judgment in Sunflower County in favor of James Carter, Jr. Because the circuit judge erroneously reduced the acreage sought to be condemned, we reverse.

FACTS
The Mississippi Administrative Reorganization Act of 1984, Ch. 488, Laws 1984, creates, defines and sets forth duties of executive officers and boards within the Office of the Governor. Among these is an Office of General Services and executive director (§§ 5, 6). This office is given the authority to acquire, by eminent domain when necessary, and subject to the approval of the Public Procurement Review Board, real property needed by State institutions (§ 33, Miss. Code Ann. 3-11-25). The Public Procurement Review Board (§ 77, Miss. Code Ann. § 27-104-7) consists of the Governor and two appointed members.
The November 6, 1985, minutes of the Board contain the following authorization to acquire abandoned railroad property adjacent to the State Penitentiary at Parchman:
C. Department of Corrections
The following request was not on the agenda. Commissioner Morris Thigpen requested that the Fiscal Management Board take those steps necessary to direct the Office of General Services, Bureau of Building, Grounds and Real Property Management to initiate condemnation proceedings to obtain the railroad property adjacent to Parchman. Commissioner Thigpen stated in his letter of request that Mr. James Chastain of the Bureau of Building was informed in this matter. Mr. Chastain produced a map at the November 6, 1985 Public Procurement Review Board meeting which pinpointed the property in question.
Upon motion by Mr. Sturdivant, seconded by Mr. Callon, the Board, in accordance with Section 31-11-25, Miss. Code of 1987, Annotated, directed that the Governor's Office of General Services, Bureau of Building, Grounds and Real Property Management take such action as is appropriate to obtain said property so as to benefit the State of Mississippi.
There being no further business to come before the Board, the meeting was adjourned.
An application for special court of eminent domain was filed on March 9, 1987, by the Governor's Office of General Services in the circuit court of Sunflower County in order to institute condemnation proceedings against the following described property:
A one hundred foot wide right of way which runs adjacent and parallel to U.S. Highway 49 and; Mississippi State Penitentiary at Parchman, through Sections 27 and 34, Township 24 North, Range 3 West in Sunflower County.
The application recites that the plaintiff is an agency of the State created by Sections 7-1-451 et seq. and 31-11-1 et seq. of the 1972 Code, and that pursuant to the provisions of Section 31-11-25 it is granted the authority to exercise the power of eminent domain.
The application states the property is contiguous to realty owned by the State, is for the use and benefit of the Department of Corrections, and necessary for the development and security of the penitentiary. It also states the defendant is James Carter, and that the applicant has been unable to reach an agreement with him for the purchase of the property.
*738 Carter's answer affirmatively pleaded that the petitioner had no right of eminent domain because Miss. Code Ann. § 31-11-25 had not been complied with. Carter also filed a motion to dismiss July 25 on the ground the plaintiff was not a legal entity, that there was no public necessity for taking his property, and the use sought was not public.
Following a hearing, the court entered the following order:
ORDER
THIS CAUSE HAVING COME to be heard on the Defendant's Motion to Dismiss the Petition for Eminent Domain pursuant to § 11-27-15, and the Court having considered the same, having heard evidence and inspected the subject property, and being advised in the premises does find as follows, to-wit:
That the Defendant's motion is well taken in that much of the property sought to be taken by eminent domain is not necessary for any legitimate public purpose. That the Plaintiff shall forthwith provide the Court and counsel opposite a plat and legal description of property owned by the Defendant from a point 100 feet south of the area where the hydrous ammonia tanks are located south of the front gate to a point 100 feet north of the wood fence located behind the house immediately north of the front gate, which the Court finds is necessary for a public purpose... .
The petitioner filed a plat pursuant to the order and two metes and bounds descriptions, option 1 and option 2. Under the first option the petitioner sought 18.11 acres and under the second, 12.12 acres. Carter also filed a plat and metes and bounds description in which the State would only acquire 5.928 acres.
At trial the petitioner proceeded under the second option, and Carter's plat was also introduced into evidence. Following jury instructions in which the jury was not told whether it was condemning 12.12 or 5.928 acres, the jury awarded Carter $50,000 for the property, attaching Carter's plat to the verdict. The petitioner moved the court to enter an order that the State was acquiring 12.12 acres or grant a new trial.
This was overruled, and the Office of General Services has appealed.

LAW
That the State may wish to acquire title to the abandoned railroad right-of-way contiguous to the East boundary of the State Penitentiary at Parchman is clearly a public purpose. A strip of land a hundred feet wide adjacent to the State Penitentiary is so clearly a public use of the property, we may dispense with any question of public use of the property. There is no suggestion that the State has any plan to use the property in any fashion except to be a part of the State Penitentiary grounds. Art. 3, § 17. Culley v. Pearl River Indus. Comm'n., 234 Miss. 788, 816, 108 So.2d 390, 400-401 (1959).
Carter's argument is that the State clearly has shown no need for more than a short stretch of this right-of-way almost three miles in length. The circuit judge agreed. Whether the circuit judge or this Court agreed, however, is not the test. Whether the State needs all this land for its penitentiary is not for any Court to decide, but a legislative question left for determination by the condemning authority, in this case the Office of General Services and the Public Procurement Review Board. Lawrence v. Town of Stonewall, 503 So.2d 260 (Miss. 1987); Paulk v. Hous. Auth. of City of Tupelo, 195 So.2d 488, 490 (Miss. 1987); Pearl River Valley Water Supply Dist. v. Wood, 248 Miss. 748, 759, 160 So.2d 917, 921 (1964); Pearl River Valley Water Supply Dist. v. Brown, 248 Miss. 4, 20, 156 So.2d 572, 578 (1963), cert. denied, 376 U.S. 970, 84 S.Ct. 1136, 12 L.Ed.2d 84 (1964).
It is only where there has been fraud or clear abuse of discretion shown that a court can interfere, and the burden is upon the landowner to prove one or the other. The circuit judge found neither fraud nor clear abuse of discretion. Mississippi Power & Light Co. v. Conerly, 460 *739 So.2d 107 (Miss. 1984), and Jackson Redevelopment Authority v. King, Inc., 364 So.2d 1104 (Miss. 1978), the only two cases in which we found abuse of discretion in determining necessity, are of no benefit to Carter. There would have to be a far greater showing of absence of necessity for the property to be condemned than was shown in this case to justify judicial interference. The circuit judge erred in reducing the acreage sought to be condemned, and we must reverse.
Resolutions condemning property should be better drafted, and the land to be condemned should be described more specifically than in this case. The deference courts give the executive branch in legislatively determining the necessity for any public taking of property carries with it a corresponding obligation by any board, commission or body to, in its resolution, set forth for the public and the landowners involved why the property is being taken and why it is needed. Also, there should be a clear and accurate description of the property about which there can be no question or uncertainty. The resolution and application in this case leave much to be desired in both need and description. No doubt the Board concluded that both need and the land to be acquired were so clear as to need no further explanation or description. We are unable to disagree with this conclusion, and Carter was never confused as to precisely what land the petitioner sought. Another board or commission, however, might not find itself so lucky upon challenge to its condemning resolution. The attorney draftsman in these resolutions should advise his client and act accordingly himself.
Reversed and remanded for hearing on all land sought to be condemned in the application.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs in result only and specially concurs by separate written opinion.
PITTMAN, J., not participating.
DAN M. LEE, Presiding Justice, specially concurring:
I concur with the conclusion reached by my learned colleagues, but not the reasoning therefore. First, I agree with the majority that "the State Penitentiary at Parchman is clearly a public purpose." (Majority at page 738). However, this case is not about the use of Parchman, but the use, public or non-public, of the strip of land adjacent to Parchman which was attempted to be taken by eminent domain by the Governor's Office of General Services. In my opinion, the trial court did not err in reducing the acreage sought to be taken by eminent domain; the error came with the confusion and uncertainty connected with the verdict.
Article 3, Section 17 of the Mississippi Constitution (1890) states:
Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

In keeping with this Constitutional mandate, the circuit court below properly examined how the property sought via eminent domain would be used and determined that only a portion was for a public use. This determination was exclusively within the province of the circuit court and will not be disturbed absent lack of evidence and absent a clear showing of abuse of discretion. See Lawrence v. Town of Stonewall, 503 So.2d 260 (Miss. 1987); Texas Gas Transmission Corporation v. Council, 199 So.2d 247 (Miss. 1967); Horne v. Pearl River Valley Water Supply Dist., 249 Miss. 358, 162 So.2d 504 (1964); Culley v. Pearl *740 River Industrial Com., 234 Miss. 788, 108 So.2d 390 (1959). After a careful review of the record, I find evidence in support of the trial court's decision, and cannot say that the trial court abused its discretion in reaching its determination that only a portion of the property sought by eminent domain was for a public use. And therein lies the problem: It is unclear from the record how much property was being taken.
Trial testimony indicates that either 12.12 acres or 5.928 acres were being taken by eminent domain. The jury instructions say nothing regarding the actual acreage being taken for which payment in accordance with fair market value was required. The jury returned a verdict for the landowner, Carter, in the amount of $50,000.00 for his property, but we know not how much of his property was taken. For this reason I would reverse and remand for further proceedings.