735 So.2d 1104 (1999)
Mrs. E.L. WINTERS a/k/a Louise Ivy Winters and Susan Patricia Winters Cowgill, Appellants,
v.
CITY OF COLUMBUS, Mississippi, Appellee.
No. 97-CA-00690 COA.
Court of Appeals of Mississippi.
March 23, 1999.
*1105 Richard Grindstaff, Jackson, Attorney for Appellants.
Thomas G. Wallace, Columbus, Allison Pritchard, Attorneys for Appellee.
BEFORE THOMAS, P.J., LEE, AND SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. The Lowndes County Special Court of Eminent Domain determined that the *1106 City of Columbus should under "quick take" procedures be allowed immediate possession of property owned by Mrs. Louise Winters and Susan Winters Cowgill. On appeal the Winters allege that the City failed to prove a public necessity or a public use, and that there was no irreparable harm if the City did not receive immediate possession of the property. We disagree and affirm.

FACTS
¶ 2. This case involves a City of Columbus drainage project. The City initiated the project in order to alleviate flooding and promote development in one section of Columbus. After being unable to obtain all needed rights, the City began condemnation under a statute that allowed immediate possession if delay would cause irreparable harm. Miss.Code Ann. § 11-27-83 (Supp.1998).
¶ 3. The landowners filed a motion to dismiss and an objection to immediate possession, arguing that there was no public necessity and that irreparable harm would not be suffered if normal procedures were followed. After a trial on April 14, 1997, the court found that the City had proven both the public necessity and the prerequisites for a "quick take." Various post-trial motions were filed and denied. Louise Winters and Susan Winters Cowgill then appealed. We refer to both appellants collectively as "the Winters."

DISCUSSION
¶ 4. Nothing in the record indicates that a trial to set the compensation due to the Winters has been held. However, an appeal may be taken immediately from a ruling on a motion to dismiss an eminent domain petition. "Any party may appeal directly to the Supreme Court from an order overruling or granting any such motion to dismiss, as in other cases, but if the order be to overrule the motion, the appeal therefrom shall not operate as a supersedeas and the court of eminent domain may nevertheless proceed with the trial on the complaint...." Miss.Code Ann. § 11-27-15 (Supp.1998).

ISSUE 1: Public necessity
¶ 5. The Winters contend that the City never made an adequate showing of need for the drainage project. We first note that the determination of whether a project is needed for the public welfare rests in the hands of the legislative body exercising the power of eminent domain. Absent an abuse of discretion or fraud, courts will not interfere in that determination. Governor's Office of General Services v. Carter, 573 So.2d 736, 738 (Miss. 1990). Once the authorized public body exercises its legislative power and finds that a public need exists, the supreme court has said that it is for the party challenging the condemnation to show a lack of necessity. Jackson Redevelopment Authority v. King, Inc., 364 So.2d 1104, 1110 (Miss.1978).
¶ 6. The City's resolution needed to contain facts sufficient to "set forth ... why the property is being taken and why it is needed." Carter, 573 So.2d at 739. The resolution stated that the purpose of the project was "to drain the properties in the Northern and Western Portions of the City of Columbus ... [; that it would] enable future development and growth in the involved areas." We disagree with the Winters that a link between drainage and development is "nebulous." We find no error in the trial court's agreement that necessity existed.
¶ 7. Furthermore, in the resolution "[t]here should be a clear and accurate description of the property about which there can be no question or uncertainty." Id. The description in the resolution is to be distinguished from the precise description necessary in the condemnation pleadings. Miss.Code Ann. § 11-27-5 (Supp. 1998). Our concern here is that the resolution that declares the public use and necessity, also give an adequate description. The property was described as a tract "located in the Northeast Quarter of *1107 Section 17, Township 18 South, Range 18 West, Lowndes County, Mississippi"; it gave the owners' names, and noted this was the 31st Avenue Drainage Project.
¶ 8. The Carter court held that a resolution that used the description of a "one hundred foot wide right of way which runs adjacent and parallel to U.S. Highway 49 ... through Sections 27 and 34, Township 24 North, Range 3 West in Sunflower County" was sufficient. Carter, 573 So.2d at 737. The court criticized the description, saying it should have been more specific, but the landowner "was never confused as to precisely what land the petitioners sought." Id. at 739. In the present appeal, we find no record that the Winters complained about the description at trial. The motion to dismiss focused on public necessity for any taking, and also on the need for a "quick take." The City's resolution was admitted into evidence without objection. The record contains various maps indicating the precise location of the 31st Avenue Drainage Project, including exactly where it crossed the various landowners' tracts. These maps predate the resolution in question here. Though we did not discover a City order in the record, quite possibly there was a minute entry prior to the contested resolution whereby the City approved the 31st Avenue Drainage Project. If so, then later City resolutions that just refer generically to the Project would not need to restate the legal description.
¶ 9. Without the Winters' having made an issue at trial of the description on the resolution, we rely, as in Carter, on the absence of proof that confusion arose as to the location of the property to be condemned. Had the resolution not approved the precise location for the project, that was a matter to be brought out at trial. On this record, we find that any deficiencies in the resolution were waived. The condemnation proceedings themselves specifically described the property to be taken.
¶ 10. The Winters next argue that whether the resolution meets legal sufficiency is irrelevant because the evidence shows this condemnation was an abuse of the city council's discretion. There were allegations that a property owner named Ralph Tomas threatened legal action if something was not done about the flooding on his land. Complaints from interested parties no doubt often cause governmental bodies to consider action. The Winters introduced no evidence below that this project was solely a result of threats of legal action. Thomas did not testify, and evidence on the role of his entreaties was minimal. The Winters are asking this court to hold that the city council surrendered its independent decision-making obligation as a result of Thomas and other land owners' pressure. It was for the trial judge sitting as the trier of fact to determine whether or not this occurred. See American Telephone & Telegraph Co. v. Purcell Co. Inc., 606 So.2d 93, 95-96 (Miss.1992).
¶ 11. Although the judge made no specific findings on this question, we may infer from her decision that if intimidation occurred, it was insufficient to taint the decision. Patel v. Telerent Leasing Corp., 574 So.2d 3, 6 (Miss.1990). We affirm that conclusion.

ISSUE 2: Public use
¶ 12. Before this issue is addressed the court must determine whether it was preserved for appeal. The City correctly states that the issue of public use was not raised in the defendants' motion to dismiss. It is also true that the matter was mentioned during the trial. Mr. Lipscomb, who represented Mrs. E.L. Winters, stated that public use would be an issue, though in context it appears that he may have meant public necessity. Mr. Goodwin, who represented a defendant who did not appeal, told the court several times that use would be an issue. The attorney for the City, Mr. Hicks, made no objection when informed of this. Moreover, he stated the City would show this was a flood *1108 control project and did in fact put on such evidence. The frequent mention of the purpose for the project is in fact public use evidence. We hold that public use was tried by consent even in the absence of a pleading. M.R.C.P. 15(b). Therefore we address the merits of the issue.
¶ 13. The principal factual question here is whether the benefits to various private owners that arise from improvements in drainage necessarily mean that there is no public use. The Winters make a considerable issue out of the City's use of the term "drainage" rather than "flood" when referring to the project at issue. That is a distinction about which we discern no difference. Whether catastrophic flooding or lesser problems that arise from inadequate drainage are the evil to be avoided, corrective action is potentially still a public benefit. Evidence was introduced that this was a flood control project, and that improvements in a drainage project in a flood plain could be considered a flood control project. Both statements are reasonable constructions of the evidence.
¶ 14. There is little question that this project would benefit several private land owners. That, however, is not the test of public use. "[I]f the primary and paramount purpose of the taking is for public use, as in the case at bar, it will not be defeated because some incidental private benefit or use results." Pearl River Valley Water Supply District v. Brown, 248 Miss. 4, 19, 156 So.2d 572, 577 (1963). A private benefit may be significant but still be incidental. There is no constitutional limitation to public works projects that only public lands can be benefitted. Ameliorating the impact of flooding and drainage on many private lands as well as to public facilities and lands may collectively constitute a public use. At best, the Winters raise insufficient questions as to the use.

ISSUE 3: The City's entitlement to immediate use and possession
¶ 15. Mississippi's "quick take" statute provides that a condemning authority may take immediate possession of property where it can substantiate that the authority will "suffer irreparable harm and delay" if regular eminent domain procedures are followed rather than the quick take procedures. Miss.Code Ann. § 11-27-83 (Supp.1998). The Winters argue that the City never substantiated that claim with evidence.
¶ 16. The defendants concede that a loss of federal funding occasioned by delay could justify a finding of irreparable harm or delay. A factual dispute arose below, centering on statements made by the legal counsel for the Mississippi Department of Economic and Community Development (MDECD). That counsel's first affidavit, dated April 24, 1997, concluded that certain rules that required use of relevant federal funds before a certain date did not apply to the funds here. However, in a subsequent affidavit dated May 2, 1997, the same counsel was less certain. He stated that the previous affidavit represented "one of the legal positions of MDECD." He further stated that an official at the Community Services Division of MDECD was acting within the scope of his authority when he wrote to the City, that absent a commencement of the project by June 15, 1997, MDECD "will probably recall these loan funds." A 1996 letter from the MDECD had also raised the need to expend the funds in a timely manner. At least some of this information, such as the May 2 counsel affidavit, apparently arrived too late to be considered by the trial court since it denied the motion for new trial on May 2, 1997.
¶ 17. Other evidence was presented at trial. A witness for the City was asked what would occur if construction on the project did not begin immediately. He stated that the City would lose the 1995 funding and have to reapply for it with no guarantee of receiving the money.
¶ 18. It was for the judge to determine what evidence was more reliable. We can *1109 find no manifest error in her conclusion that there was a potential for the city to lose its funding if construction did not begin in short order.
¶ 19. The Winters also contend the City failed to show flooding would occur in affected areas, but testimony from at least three witnesses indicated that there was a flooding problem. The trial judge was well within her rights to agree that there was a risk of harm due to flooding. Thus, both due to the potential loss of funding and to the risk of flood damage, the City demonstrated sufficient grounds supporting an immediate taking.
¶ 20. THE JUDGMENT OF THE LOWNDES COUNTY SPECIAL COURT OF EMINENT DOMAIN IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING, P.J., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.