## THOS. J. COOPER v. B. F. MOORE.

1. CONSTITUTION—MILITARY AUTHORITY—TENURE OF JUDICIAL OFFICE.—It is plainly inferable that other offices not enumerated in sec. 6 of art. 12 of the new constitution, were intended to continue in office until some provision should be made by law for others to discharge their functions, and, therefore, the judges in office by the appointment of the military commandant would remain in office until the legislature organized the districts and prescribed the manner of the induction of the new judicial system.

2. OFFICIAL ACTS OF OFFICERS DE FACTO GOOD—STATUTE.—At common law where a person claims to hold an office, his title thereto shall not be questioned in an action

to which he is not a party; but while he holds the office *de facto* his acts and doings therein shall be deemed good. 7 Bac. Abr., 283; Fowler v. Bebee, 9 Mass., 231; Justices of Jefferson v. Clarke, 1 Monroe, 86; 4 Cranch, 75; 7 Johns., 548; 2 Penn., 297; 2 Kent's Com., 339; and Rev. Code, 138, art. 194, is declaratery of this doctrine of the common law.

3. Same.—The incumbent of a judicial office cannot be impeached collaterally and indirectly. If he is in possession of the office, discharging its ordinary functions, his official acts are conclusive as to all persons interested in or effected by them. If he is a usurper, in possession without right, the state whose authority he abuses can move directly for his ejection and punishment.

Appeal from the chancery court of Choctaw county. Coffee, J.

Appellant assigns for error, that the court erred in overruling the demurrer of the defendant to complainant's bill.

*Harris & Withers*, for appellant.

This was a bill filed to enjoin the execution of a judgment, on the ground that Clifford, the judge presiding, was not judge of·said court; because, being an appointee of General Ames, his office was vacated by the adoption of the new constitution of 1868. The judgment was rendered on the 31st of March, 1870. The constitution of 1868 was approved by congress, 23d February, 1870. The act organizing the circuit courts, under this constitution, was passed April 22, 1870.

The bill alleges merely, that, by reason of the adoption of the new constitution, the functions of the judges, appointed by the commander of the district, ceased, and consequently all judgments, etc., rendered by them, after that time, were void. The bill, in addition, states simply, that execution issued upon the judgment of the 31st of March, 1870, which was levied on a steam engine and certain land of the defendant, and prays for injunction simply. To this bill there was a demurrer, assigning for cause: 1st. The remedy is at law; 2d. That the facts stated do not show an invalid or void judgment.

The court overruled the demurrer, and the case is brought to this court by appeal. The error assigned is the overruling of this demurrer.

The case, on the first point, is decided by this court, in

Field v. Batt, Foster & Co., No. 11,981, Opinion Book, p. 256. It is a simple trespass, in the case of the engine, and as to the land, a sale does not affect the title of the defendant, if the judgment be void.

The constitution of 1868 is silent on the subject of officers who are not strictly county officers.   Sec. 6, of art. 12, was intended to limit the tenure of the inferior officers of the counties.   The object of the section was to provide particularly for filling a large number of inferior elective offices, intimately connected with the people, on the supposition that no elections might be ordered by the legislature, for an indefinite time.

We draw a distinction between the adoption of a constitution, and its taking effect.   Only those provisions took immediate effect on the adoption, which, without immediate legislation, had full and complete operation.   There are, however, certain provisions, which, without legislation, could not go into operation—such as the provisions affecting the judicial department.

There is no supposition so unreasonable as that the convention designed to create an *interregnum*.   Indeed, this sixteenth section affords conclusive evidence that the convention did not intend that the old constitution should, to every extent, be abrogated and annulled the moment the new one was approved by congress.

The repealing clause of the schedule, art. 13, it is true, declares that all previous constitutions of the state are repealed and annulled; but it is quite obvious that this language could not have been understood to impart instant operation, because it would conflict with the 6th section of art. 12.   The precise legal effect of such a declaration is, that when the new constitution takes effect by the legislation necessary to give it vitality, the old constitution ceases to operate.

Article 12, section 6, evidently assumes that, without some provision to that effect, the incumbents of all offices, which were not to be filled by the elections which took place at

the time of popular ratification, would continue to perform their functions until displaced by the organization of the state under the new constitution.

It is to be noted that in all the previous constitutions, that of 1817 and 1832, the schedules provide that the officers " shall continue to hold and exercise," etc. This provision was not needed, but it was inserted out of abundant caution, just as the provisions as to individual rights, contracts, and pre-existing laws were inserted.

The language of art. 12, sec. 6, assumes the continuance of officers until displaced by re-organization. Here the enacting clause is confined to county officers. The proviso cannot be held to extend the enacting clause to district officers not county officers.

We prefer, however, to place the case upon the conservative principle, that we are not, without the clearest expression to that effect, to impute to the convention the design to disorganize the judicial department of the government; but merely the design to replace the old, by a new organization, fitting on the old one so as to leave no hiatus. Smith v. Halfacre, 6 How., 600.

There is, however, a principle of the common law, and a provision of the code not repealed by the constitution, because not repugnant to it, which protects the judgment in this case from assailment; Code, 138, art. 194 ; which is really but declaratory of the common law.

The case of Alcorn v. Shelby, 36 Miss., 273, and all cases arising before the Code of 1857, are no longer authority on this point, and the doctrine which is found in People v. White, 24 Wendell, 525. This was the case of an objection made to the title of a person to preside as a judge in a. criminal cause. A statute gave the recorder of New York power to sit as a judge, with others. It was contended that the statute was in violation of the constitution, and void. The court, after full examination of the subject, held that the judgment would be binding, although the statute was void, and that the rule of the common law applied to a judge; that the government

alone could inquire into the title of the party to hold the office.   Cook v. Halsey, 16 Peters, 71.

Simrall, J.:

Judgment was rendered March 31, 1870, against the appellant, in the circuit court of Choctaw county, the presiding judge being an appointee of the late military commandant of this district.

It is assigned for error that judgment is void, and, therefore, the injunction restraining its execution, ought to have been made perpetual.

The objection made in the bill is that, upon the adoption of the constitution, the functions of the circuit judges then in office by the military appointment, immediately ceased, and all their judicial acts are null and void.

The constitution was adopted in convention, May 15, 1868, ratified by the people the 1st of December, 1869, and accepted and approved by congress, the 23d February, 1870.

The constitution makes no express provision in respect to any officers, except those enumerated in section 6 of article 12.   These are county, township and precinct officers, whose terms shall expire thirty days after the ratification of the constitution.   Thereafter, the governor shall appoint such officers, with consent of the senate; provided, that such officers shall hold their offices until successors are appointed. District officers are enumerated in the proviso, though not specified in the first clause of the section.   If the circuit judge be embraced in the term "district officers," then, very surely, by the letter of the constitution, he holds office until displaced by his successor.

It should be borne in mind, by all called upon in any official position, to construe the constitution, that it was framed as an instrument of government, to organize society under authority, and that must be the truest interpretation, which best harmonizes with its design, its object, and its general structure.   1 Story's Com., 445.   Government is a practical thing, made for the happiness of mankind, that liberty,

industry and its fruits, and property, protected by law, may be enjoyed.   Primarily, then, we look to the constitution, its nature and design, its scope and general scheme, as apparent, from the structure of the instrument, received as a whole, and also in its component parts.   Contemporary history may be resorted to as furnishing aid to interpretation. When the text is susceptible of two interpretations, that should be resorted to which is most consonant with the objects and intent of the constitution; that which will give efficacy and force as a government, rather than that which impairs its operations, and reduces it to imbecility.   All of its parts are to be taken together, and that interpretation given, which agrees with the general scheme or plan developed. Where the instrument is not entirely explicit in itself, and requires construction, it should not be so construed as to cripple the government, and render it unequal to the objects for which it is declared to be instituted.

The preamble recites, "To the end that justice be established, public order maintained, and liberty perpetuated, etc., we the people do ordain this constitution."   It would be most remarkable, therefore, that such construction should be given to the instrument, as for a time, would leave no tribunal where justice was administered, and law had an interpreter, or means to repress disorder.   Looking to the actual condition of affairs, we find a state government organized under the constitution, to take the place of an anomalous government, at the head of which was a military commandant.   There was, however, a judiciary administering justice according to law.   Unless compelled by the very text of a positive provision, an interpretation, which would produce for a time, an *interregnum*, a cessation of authority in these departments especially which are, or ought to be, perpetually in existence, in readiness to interpose in behalf of "justice and order, and liberty" should, if possible, be avoided.

It is plainly inferable, that other officers, not enumerated in the 6th section of art. 12, were intended to continue in

office until some practical provision was made by law, for others to discharge their functions. The judges in office by appointment of the military commandant, would remain in office until the legislature should organize the districts, and a way be opened for the induction of the new judicial system. Some parts of the constitution was operative *propria vigore*, from the date it went into effect. Such are most, if not all, the provisions of the bill of rights. Other parts required legislation, to provide the machinery by and through which its provisions could be made effective. The chancery courts is an example of this. These courts could not be organized without legislation districting the state.

There is another aspect of the subject which is conclusive against the case made in the bill. It is a very ancient and salutary principle of the common law, where a person claims to hold an office, his title shall not come in question in an action to which he is not a party; but while he holds the office *de facto*, his acts and doings therein will be deemed good. 7 Bacon Ab., 283; Fowler v. Bebee, 9 Mass., 231; Justices of Jefferson v. Clark, 1 Monroe, 86; *ex parte* Bolman, 4 Cranch, 75; People v. Collins, 7 Johns., 549; McKein v. Somers, 2 Penn., 269; 2 Kent's Com., 330.

Art. 109, Rev. Code, 138, is declaratory of the common law. This makes valid, official acts in so far as third persons are interested therein, or affected thereby, whether such person be lawfully entitled to hold such office, or whether lawfully qualified or not. For the usurpation, or unlawful holding, or exercising its functions without lawful right, the person may be dealt with, and punished at the suit of the state. Such a rule is essential to the repose of society, and the orderly administration of the functions of public authority. It were impossible, for any practical good, to administer any department or sub-division of the state government, if, at every exertion of authority, the functionary could be challenged to produce the evidence of his right to the office, and the question could be made of his title thereto.

The incumbent cannot be impeached collaterally and indi-

rectly; if he is in possession of the office, discharging its ordinary functions, his official acts are conclusive as to all persons interested or affected by them.     If he is a usurper in possession without right, the state, whose authority he abuses, can move directly for his ejection and punishment.

Where a statute makes void the official acts of persons who have not been duly appointed or qualified, the courts have so pronounced, as in Shelby v. Alcorn, 36 Miss., 292; McNutt v. Lancaster, 9 S. & M., 570.     It was doubtless from the great inconvenience and evil pronounced by such rulings, that the revised statute introduced the principle above quoted.

In McNutt v. Lancaster, a defaulting tax-collector was released from liability on his bond, because he had not taken the oath of office.

The decree of the chancellor is reversed, and decree here sustaining demurrer and dismissing the bill.