364 So.2d 1104 (1978)
JACKSON REDEVELOPMENT AUTHORITY
v.
KING, INC., James L. Spencer, Trustee, et al.
No. 50935.
Supreme Court of Mississippi.
November 1, 1978.
Rehearing Denied December 13, 1978.
*1106 Watkins, Pyle, Ludlam, Winter & Stennis, William F. Winter, John E. Stone, Ernest G. Taylor, Jr., Zachary Taylor, III, Jackson, for appellant.
Robert G. Nichols, Jr., Young, Scanlon & Sessums, Pat H. Scanlon, Perry, Crockett, Morrison & Starling, Robert E. Perry, Jackson, for appellees.
Before ROBERTSON, SUGG and COFER, JJ.
SUGG, Justice, for the Court:
The County Court of the First Judicial District of Hinds County, sitting as a special court of eminent domain, dismissed the petition of the Jackson Redevelopment Authority (hereafter JRA), the urban renewal agent for the City of Jackson, to condemn the real property of appellees on motion of the appellees filed under the provisions of section 11-27-15 Mississippi Code Annotated (1972). The trial court held: (1) section 43-35-201 Mississippi Code Annotated (Supp. 1977) was unconstitutional; (2) Jackson's urban renewal election held in June, 1971 was invalid; (3) the JRA was not a legal entity which could take property by eminent domain; (4) the JRA was not a de jure corporation; (5) two of its commissioners were not qualified to serve on the board of directors of JRA; (6) a quorum was not present at the October 28, 1976 meeting at which resolutions were adopted to condemn the property of appellees; and (7) the number of votes cast for the resolutions was insufficient.
JRA argues on appeal that some of the matters relied on by the court in dismissing the petitions were beyond the scope of inquiry authorized by section 11-27-15. It further contends that the lower court erred in its ruling on each of the questions. We affirm on the sole ground that a quorum of the commissioners of JRA was not present when the resolutions to condemn appellees' property were adopted; therefore, no public necessity for taking the property of appellees was shown.
Section 43-35-201 Mississippi Code Annotated (Supp. 1977) was originally enacted as Miss.Gen.Laws Ch. 499 § 1 (1970). The first ten sections of Chapter 499[1] authorize the governing authorities of certain municipalities to delegate to their urban renewal agencies the authority to establish and construct municipal parking facilities. It also authorizes the governing authorities of any *1107 municipality to issue revenue bonds for acquisition and construction of public parking facilities when a municipality has delegated the power to construct public parking facilities to its urban renewal agency. Ch. 499[2] §§ 11-15 authorize the governing authorities of any municipality of 100,000 population or more to engage in urban renewal or redevelopment projects in its central business district after submitting the proposition to a vote of the qualified electors of the municipality and a majority of those voting vote for the proposition. The last three sections of Ch. 499[3] provide: (1) the power conferred by the act is cumulative and is in addition to any other power conferred by law; (2) bonds may be issued to carry out the purposes of the act; and (3) two additional members may be appointed to the board of commissioners of urban renewal agencies in any municipality which has delegated to its urban renewal agency the power, duties and responsibilities relating to parking facilities as provided for in section one of the act.
We first address the question of whether section 43-35-201 Mississippi Code Annotated (Supp. 1977) is constitutional. The trial court held that the statute was unconstitutional because it was a local, private and special law granting the power to exercise the right of eminent domain contrary to the provisions of Section 90(r) of the Mississippi Constitution of 1890. Section 90(r) provides:
The legislature shall not pass local, private, or special laws in any of the following enumerated cases, but such matters shall be provided for only by general laws, viz.:
.....
(r) Conferring the power to exercise the right of eminent domain, ...
The first paragraph of section 43-35-201 follows:
The governing authorities of any municipality of one hundred thousand (100,000) population or more, and the governing authorities of any municipality of twenty-five thousand (25,000) population or more located in any county adjacent to a county in which a municipality of one hundred thousand (100,000) or more is located, and the governing authorities of any municipality in any county having a population in excess of one hundred thirty thousand (130,000) according to the 1970 decennial census, and the governing authorities of any municipality in any county having a population in excess of twenty-seven thousand (27,000) according to the 1970 decennial census and bordering on the State of Tennessee wherein United States Highways 45 and 72 intersect shall have, and may, within their discretion, by resolution duly adopted, delegate to its urban renewal agency or redevelopment authority created pursuant to section 43-35-33, any or all of the following additional powers, duties and responsibilities, as specified in the resolution of the governing authorities of the municipality.
The proof shows that Jackson has a population of more than 100,000 and is the only city in the State of Mississippi falling in this category. We held in Vardaman v. McBee, 198 Miss. 251, 21 So.2d 661 (1945) that where a law is broad enough to reach every portion of the state and to embrace within its provisions every person or thing distinguished by characteristics sufficiently marked and important to make them clearly a class by themselves, it is not a special or local, but a general law even though there may be but one member of the class or one place on which it operates.
In numerous cases we have held that the question of classification is one primarily for the legislature, and in the exercise of this power the legislature possesses a wide discretion. We have also held in view of the presumptions in favor of a legislative judgment as to classification, the legislative judgment will be upheld if any state of facts can reasonably be conceived to sustain it, and can be overthrown by the courts only *1108 when it is clearly erroneous. Board of Education v. State Educational Finance Commission, 243 Miss. 782, 138 So.2d 912 (1962). In Loden v. Mississippi Public Service Commission, 279 So.2d 636 (Miss. 1973) we stated:
In order to be a general law it is not required in all cases that a statute literally extend to all the people of the state in every geographical part thereof, but it may be constitutionally intended to operate within a limited territory or place. 82 C.J.S. Statutes § 162, pages 270-271 (1953); 50 Am.Jur. Statutes section 12, page 29 (1944). This Court held over a half century ago that a law is general not by reason of the fact that it may be operative upon every citizen of the state but "because every person that can be brought within its predicament becomes subject to its operation." Drainage Dist. v. Buckner, 108 Miss. 427, 66 So. 784 (1914). See Delta & Pine Land Co. v. Board of Supervisors, 228 So.2d 893 (Miss. 1969); Culley v. Pearl River Indus. Comm'n., 234 Miss. 788, 108 So.2d 390 (1959). (279 So.2d at 639).
We have also upheld general legislative acts where the classification was based on population. We reasoned in Clark v. State, 169 Miss. 369, 152 So. 820 (1934) and State ex rel. Knox v. Speakes, 144 Miss. 125, 109 So. 129 (1926) that classification by population is permitted if the classification has a reasonable relation to the purpose sought to be attained and is germane to the subject matter of the legislation.
The first category in section 43-35-201 applies to municipalities of 100,000 population or more and is clearly a general classification because it is based solely on population, is not tied to a particular census and any municipality within the state may come within that classification when its population reaches 100,000. We hold that the legislature's classification of cities with populations over 100,000 to meet the parking problems created by their large population is valid, and this classification is reasonable and germane to the subject matter of the legislation. The statute is a general law and is constitutional.
We need not consider the constitutionality of the other categories under section 43-35-201 because if these categories constitute unconstitutional classification it is the Court's duty to separate the valid from the invalid part if this can be done and to permit the valid part to stand. Wilson v. Jones County Board of Supervisors, 342 So.2d 1293 (Miss. 1977).
The trial court relied on, and it is argued here, that our decision in Smith v. Transcontinental Gas Pipeline Corp., 310 So.2d 281 (Miss. 1975) controls. Smith is distinguishable because the section of the statute under consideration in Smith sought to exempt the citizens of Jones County from the operation of a general law applicable to citizens of all other counties in the state except Jones County. As such, the law violated Section 87 of the Constitution.
Although not cited, we have considered Rolph v. Board of Trustees of Forrest County General Hospital, 346 So.2d 377 (Miss. 1977). However, it is not applicable because the statute under consideration there was an attempt to vest the trustees of the Forrest County General Hospital with authority to waive governmental immunity from negligent, tortious, or unauthorized acts of its agents, servants or employees. We held that the statute in Rolph violated Article 4, Section 87 of the Mississippi Constitution. It was a special law enacted for the benefit of any person who might be injured because of the negligence of the agents or employees of the hospital. It amounted to suspending governmental immunity for the benefit of private individuals injured by employees of one hospital. Although not articulated in Smith, supra, and Rolph, supra, it was implicit in the holding that the statutes under consideration in those cases suspended general laws for the benefit of private individuals.
It is also argued that our decision in Wilson v. Jones County Board of Supervisors, 342 So.2d 1293 (Miss. 1977) is controlling. Wilson does not apply because the portion of the statute under consideration *1109 in Wilson violated Section 112 of the Constitution of 1890 which requires uniform and equal taxation throughout the state.
It is also argued that the statute violates the Fourteenth Amendment to the United States Constitution. This argument is not well taken because any municipality in the state may establish public parking facilities and may exercise the right of eminent domain to acquire property necessary for such purpose. Sections 21-37-23, 24 and 25 Mississippi Code Annotated (1972). Also, any commission created under legislative act, such as JRA, operating as an agency or any municipality has the power to exercise the right of eminent domain. Section 21-37-47, Mississippi Code Annotated (1972).
The trial court held that Jackson's urban renewal election held in June, 1971 was invalid because the description of the area to be included within the urban renewal project set forth in the ordinance and in the notice of the election did not close. The urban renewal election was conducted in accordance with Miss.Gen.Laws Ch. 499 §§ 11-15 (1970) [sections 43-35-221 through XX-XX-XXX Mississippi Code Annotated (Supp. 1977)]. The authority of the municipality to delegate its power to establish and construct public parking facilities to its urban renewal agency is not derived from the above sections, but this authority is derived from Miss.Gen.Laws Ch. 499 § 1 [section 43-35-201 Mississippi Code Annotated (Supp. 1977)]. Therefore, the validity of the election on the urban renewal project has no bearing on the issues in this case.
The trial court also held that the JRA was not a legal entity which could exercise the power of eminent domain because it had failed to file annual reports required by section 43-35-33(c) Mississippi Code Annotated (Supp. 1977). The record shows that JRA was created as an urban renewal agency strictly in accord with the requirements of section 43-35-33. Failure to file annual reports did not destroy the character of the agency. We hold the trial court erred in this holding.
The trial court also held that two of the seven commissioners of the JRA were not qualified to serve on the board of directors because they did not meet the residence requirements of section 43-35-33(c) Mississippi Code Annotated (Supp. 1977).
Section 25-1-37 Mississippi Code Annotated (1972) provides:
The official acts of any person in possession of a public office and exercising the functions thereof shall be valid and binding as official acts in regard to all persons interested or affected thereby, whether such person be lawfully entitled to hold the office or not and whether such person be lawfully qualified or not; but such person shall be liable to all the penalties imposed by law for usurping or unlawfully holding office, or for exercising the functions thereof without lawful right or without being qualified according to law.
In the case of Cooper v. Moore, 44 Miss. 386 (1870), the Court stated:
It is a very ancient and salutary principle of the common law, where a person claims to hold an office, his title shall not come in question in an action to which he is not a party; but while he holds the office de facto, his acts and doings therein will be deemed good. 7 Bacon Ab., 283; Fowler v. Bebee, 9 Mass., 231; Justices of Jefferson v. Clark, 1 Monroe, 86; ex parte Bolman, [Bollman] 4 Cranch, 75 [2 L.Ed. 554]; People v. Collins, 7 Johns., 549; McKein v. Somers, 2 Penn., 269; 2 Kent's Com., 330.
Art. 109, Rev.Code, 138, is declaratory of the common law. This makes valid, officials acts in so far as third persons are interested therein, or affected thereby, whether such person be lawfully entitled to hold such office, or whether lawfully qualified or not. For the usurpation, or unlawful holding, or exercising its functions without lawful right, the person may be dealt with, and punished at the suit of the state. Such a rule is essential to the repose of society, and the orderly administration of the functions of public authority. It were impossible, for any *1110 practical good, to administer any department or sub-division of the state government, if, at every exertion of authority, the functionary could be challenged to produce the evidence of his right to the office, and the question could be made of his title thereto.
The incumbent cannot be impeached collaterally and indirectly; if he is in possession of the office, discharging its ordinary functions, his official acts are conclusive as to all persons interested or affected by them. If he is a usurper in possession without right, the state, whose authority he abuses, can move directly for his ejection and punishment.
Where a statute makes void the official acts of persons who have not been duly appointed or qualified, the courts have so pronounced, as in Shelby v. Alcorn, 36 Miss., 292 [273]; McNutt v. Lancaster, 9 S. & M., 570. It was doubtless from the great inconvenience and evil pronounced by such rulings, that the revised statute introduced the principle above quoted. (44 Miss. at 392, 393).
The construction of Section 25-1-37 as announced in Cooper has been followed in numerous cases without exception. The most recent cases on this question are Crocker v. Sears, Roebuck and Co., 346 So.2d 921 (Miss. 1977) and Raper v. State, 317 So.2d 709 (Miss. 1975). The two commissioners in question were appointed by the Council of the City of Jackson and were in possession of the office as commissioners of the JRA. As such, their right to the office cannot be impeached in a collateral proceeding.
The trial court also held that there was not a quorum present when the JRA voted to condemn the property of the appellees. One of the grounds for dismissal of a petition to condemn land is:
[T]hat there is no public necessity for the taking of the particular property or a part thereof which it is proposed to condemn ... [Section 11-27-15 Mississippi Code Annotated (1972)].
We held in Paulk v. Housing Authority of City of Tupelo, 195 So.2d 488 (Miss. 1967) that the question of public necessity is determined by a duly authorized governing body in its exercise of legislative power at the time the need is recognized and the burden of proof on the issue of necessity is on the landowner who seeks to show lack of necessity.
The presence of a quorum at a meeting is important because public necessity for taking property by eminent domain is not shown unless a quorum is present at the meeting where the determination is made that public necessity requires the taking of real property by condemnation.
JRA is a "public body corporate" with seven commissioners and, under section 43-35-33(c) Mississippi Code Annotated (Supp. 1977), a majority of the commissioners is required to constitute a quorum for the purpose of conducting business and exercising the powers of the agency; therefore, four commissioners are required to constitute a quorum. On the day in question four commissioners were present at the meeting; however, one of the commissioners was disqualified to vote, and did not vote, on the question of taking the property of the appellees by eminent domain.
The rule in other jurisdictions is that a director of a corporation cannot form a part of a quorum to act on a proposition where he is disqualified to vote on the proposition or where his individual interest is adverse to the corporation.
The rule is stated in 19 Am.Jur.2d, Corporations, § 1128 (1965) as follows:
According to a number of cases, since a director usually cannot act for the corporation as such in matters in which he has an adverse interest, a director present when the directors attempt to take action upon a matter in which he is adversely interested or otherwise disqualified cannot be counted to make a necessary quorum, even though he does not vote upon the matter.
To the same effect we find the following statement in 19 C.J.S. Corporations § 749 (1940):

*1111 A director who is disqualified by personal interest from voting on a particular matter before the meeting cannot be counted for the purpose of making a quorum or a majority of the quorum, nor for the purpose of determining how many constitute a majority. Broadly speaking, the act done, or action taken, is invalid where the presence of the disqualified director is necessary to constitute a quorum, ...
We therefore conclude that a quorum was not present at the meeting when the JRA adopted the resolution to exercise the power of eminent domain to obtain the property of the appellees. For this reason the trial court properly dismissed the petition of the JRA.
Appellees filed a cross-appeal and assigned eight errors. Cross-appellants argue that the trial court erred by allowing JRA to respond to their requests for admissions after the 30 day response period had expired contrary to section 13-1-236 Mississippi Code Annotated (Supp. 1977). This question is moot because we affirmed cross-appellees' motion to dismiss the petition of JRA.
Cross-appellants also argue that JRA was guilty of an abuse of discretion in selecting a site and determining that public necessity required the taking of appellees' property. Cross-appellants admit that the selection of a particular site as a subject of a taking by eminent domain is a legislative question[4] and the courts will not interfere unless abuse of discretion or fraud is proved. Pearl River Valley Water Supply District v. Brown, 248 Miss. 4, 156 So.2d 572 (1963). The trial court did not find that there was an abuse of discretion and, from the evidence in this case, we are unable to say that the court was manifestly in error in failing to make this finding.
Cross-appellants further contend that the Mississippi eminent domain statutes, section 11-27-1, et seq. Mississippi Code Annotated (1972) are unconstitutional because they violate the Fifth Amendment of the United States Constitution and section 17 of the Mississippi Constitution which provide that private property shall not be taken for public use without "just compensation" or "due compensation."
Cross-appellants argue that if property is taken by eminent domain and they are required to pay their attorney's fees and other expenses incurred in the litigation out of the judgment, they would not receive just compensation because the value of the property would be reduced by such fees and expenses.
Our eminent domain statutes do not provide for payment of expenses of litigation incurred by a property owner defending where his property is taken. The question raised by cross-appellants does not involve the constitutionality of the eminent domain statutes but involves the definition of "just compensation" required by the Fifth Amendment and "due compensation" required by Section 17 of our Constitution. We have not passed on this precise question and decline to pass on it because cross-appellants' property was not taken so there is no justiciable issue for decision in this case.
We note that the United States Supreme Court held in Dohany v. Rogers, 281 U.S. 362, 50 S.Ct. 299, 74 L.Ed. 904 (1930) that attorneys fees and expenses are not embraced within just compensation for land taken by eminent domain. Our view that the question raised by cross-appellants involves the definition of just compensation and due compensation rather than the constitutionality of the entire statutory scheme, is strengthened by the fact that a number of state and federal courts have considered the question, not from the standpoint of whether the statutory method of exercising the right of eminent domain is constitutional, but from the standpoint of whether expenses incurred in defending eminent domain cases should be allowed under the constitutional guaranty of due or just compensation. In essence, the courts have limited their consideration of the question to a determination of whether such *1112 expenses should be included in the award for property taken by eminent domain. Some state and federal courts hold that the constitutional guaranty of just or full compensation for private property appropriated for public use requires that a condemnee be reimbursed by the condemnor for the expenses incurred in defending the eminent domain proceedings. Conversely, other courts take an opposite view, holding this is a question for the legislature. 68 A.L.R. 3rd, page 555, et seq. Some state legislatures have provided that expenses incurred in defending eminent domain cases are recoverable by the condemnee when his property is taken.
Cross-appellants also contend that the eminent domain statute is unconstitutional because section 11-27-37 Mississippi Code Annotated (1972) provides that a landowner is entitled to reasonable expenses, including attorneys fees, of defending a condemnation suit where, (1) the condemnation proceedings are abandoned by the condemnor, or (2) the condemnor fails to pay the damage and cost awarded to the defendant within the time specified therein, or (3) the judgment is that petitioner is not entitled to condemn the property.
Cross-appellants argue this violates due process because landowners whose property is taken by eminent domain are not paid the expenses of defending the suit. We perceive no violation of equal protection of the law because the statute makes provision for entirely different situations, a permissible classification.
Cross-appellants also argue that the trial court erred in failing to hold that there was no public necessity for the taking of their property. This question is moot because we held in discussing the direct appeal that public necessity was not shown because of the lack of a quorum at the meeting at which the taking resolutions were adopted. We do not know whether JRA will attempt to take this property so any opinion on this question would be advisory only.
Cross-appellants contends in three assignments of error that two of the commissioners failed to meet the residential requirements of section 43-35-33(c) Mississippi Code Annotated (1972), that two of the commissioners had conflicts of interest and failed to file statements of such conflicts of interest, and that three of the commissioners were not qualified because they held other public office with the City of Jackson contrary to section 43-35-35 Mississippi Code Annotated (1972). These three assignments of error constitute a collateral attack on the right of these persons to serve as commissioners of JRA. We held infra that the question of their qualifications may not be raised in a collateral proceeding.
Cross-appellants also contend that the trial court erred in failing to hold that the JRA plans to build a "mini mall" in the proposed public parking facility is contrary to the provisions of section 21-37-23 Mississippi Code Annotated (1972). This argument overlooks section 43-35-201(a) which provides in part:
Commercial enterprise activities other than parking of motor vehicles may be authorized on leased property comprising any part of such parking facilities and related structures, but only upon an express finding, by resolution of the governing authorities of the municipality as hereinafter provided, that such commercial enterprise activities are essential to the economic feasibility of the proposed parking facilities.
Argument is also advanced that permitting commercial enterprise activities other than public parking would not constitute taking of private land for public use. We answered this question in Paulk v. Housing Authority of City of Tupelo, 195 So.2d 488 (Miss. 1967) where we stated:
[3] Government has the right to take private land for public use upon just compensation. This right is granted to the state government and to designated public agencies by the State Constitution and statutes. In this instance the Housing Authority has selected as a method of renewal and redevelopment the reselling of the land to private persons, subject to restrictions designed to prevent a recurrence of slums.

*1113 Appellant contends this is not a taking for public use, but a governmental exercise of power by which one private owner is deprived of his land and another private person is allowed to purchase the land for private use.
In the Pearl River Valley Water Supply Dist. v. Brown, 248 Miss. 4, 156 So.2d 572, 158 So.2d 694 (1963). Brown case it was decided that where the incidental power to lease land to a private individual or corporation is connected with a paramount public use, the fact that some of the land to be taken is to be thereafter leased does not defeat the power of eminent domain.
This decision was followed in Wright v. Pearl River Valley Water Supply Dist., 250 Miss. 645, 167 So.2d 660 (1964) and Pearl River Valley Water Supply Dist. v. Wood, 248 Miss. 748, 160 So.2d 917 (1964).
[4] Appellant attempts to distinguish the present actions from those cases. There the use of land for lease to private individuals after condemnation was incidental to the paramount public purposes of pollution control, control of access, and providing for recreational facilities. Appellant says there is no such public purpose to be served here. We disagree. The public purpose is urban renewal and slum clearance. This purpose is not necessarily fulfilled when clearance is complete. Here plans for redevelopment are to be carried forward under regulations which will insure against a recurrence of slums in this area. (195 So.2d at 490).
We are of the opinion that taking land for public parking facilities is a public use and the authority contained in the statute to carry on other commercial enterprise activities in the facility does not destroy public use. The paramount purpose of the taking is for public use.
For the reason stated the judgment of the trial court to dismiss the petition of JRA to condemn the property of appellees is affirmed.
AFFIRMED.
PATTERSON, C.J., and WALKER, BROOM, LEE and COFER, JJ., concur.
BOWLING, Justice, specially concurring:
I agree with the majority opinion in affirming the lower court's holding that a quorum was not present at the October 28, 1976, meeting of the Jackson Redevelopment Authority, and, therefore, the resolutions authorizing the condemnation of appellees' property were void. We may readily see, however, that under the majority opinion the way is paved for new resolutions and new filing of petitions to take appellees' property.
I would go further and affirm the lower court's finding that Mississippi Code Annotated section 43-35-201 (Supp. 1972) is unconstitutional. Article 4, section 90 of the Mississippi Constitution reads as follows:
The legislature shall not pass local, private, or special laws in any of the following enumerated cases, but such matters shall be provided for only by general laws, viz:
.....
(r) conferring the power to exercise the right of eminent domain, ... .
There is nothing ambiguous, uncertain or doubtful in the language of this constitutional provision. The reasoning behind it as recited by the framers of the Constitution is clear, particularly when applied to the facts of the present case. A person who has worked all his life and accumulated a piece of property with which he makes a livelihood for himself and his family is entitled to protection from an arbitrary taking of that property and livelihood. The writers of the Constitution could see a situation possibly would exist in the future as the one now before us.
Is Code section 43-35-201, as incorporated in the majority opinion, a local, private or special law conferring the power of eminent domain?
I do not believe that any person in his right mind would seriously contend that the statute in question applied to any city except Jackson, Vicksburg, Corinth and Gulfport. In analyzing the meaning and import *1114 of any statute we always look to ascertain the legislative intent. What does the language of the statute show us in regard to this intent? Can any rational person say that the statute applying to a municipality of 25,000 population or more located in any county adjacent to a county in which a municipality of 100,000 or more is located applies to any city in the state other than Vicksburg? To say otherwise is pure folly.
Going further, can anyone say that the statute applying to any municipality with a population in excess of 27,000 according to the decennial census and bordering on the State of Tennessee where U.S. Highways 45 and 72 intersect applies to any city in the state other than Corinth?
My purpose in emphasizing these requirements of the statute is to emphasize my opinion that the legislature, even though with well meaning intentions, clearly intended for the statute to be a special statute applying to the four cities in question. Of course, with Jackson as one of the four, it was not necessary to go to the extent of placing highways, placing cities in certain directions from Jackson, and other specific directions. It was only necessary to refer to Jackson as a city of over 100,000 population. The proof is clear that no other city in the state anywhere approaches this population and will not for many, many years. These are the reasons, therefore, that with all respect to the drafters of the bill, when looking to the intention of those well meaning persons, it is inescapable that the statute was intended to be local, private and special as to Jackson, Vicksburg, Corinth and Gulfport and no other.
The first case cited in the majority opinion is Vardaman et al. v. McBee, 198 Miss. 251, 21 So.2d 661 (1945). In reading that case I find the following clear language:
Class legislation, also often called local or private legislation, is legislation limited in operation to certain persons or classes of persons, natural or artificial, or to certain districts of the territory of the State, and statutes which make unreasonable or arbitrary classifications or discriminations violate provisions of Constitutions prohibiting special laws granting any special or exclusive privileges, immunities, or franchises, or passed for the benefit of individuals inconsistent with the general law of the land. (Citations omitted).
The majority opinion in finding that the statute applicable to only four cities is "general" rather than "local, private or special," has much to say about "population classification." I refer back to the original part of this opinion regarding the intention of the Legislature to limit the statute's application to the four cities in question. No other city in the state with a population of over 25,000, as the statute applies to Vicksburg, or population in excess of 27,000, as the statute applies to Corinth, or any other city of any population whatever, has the benefit of the statute in question and their citizens are protected. For instance, the statute does not apply to Eupora, Holly Springs, Water Valley, Columbia, Monticello or Forest, all home town cities of the other members of the Court except one Jackson resident. Can either the Legislature or this Court make a legislative or judicial decision that none of these cities have parking problems and none need "public parking facilities" including city-owned commercial enterprises?
The majority opinion, in discussing "population classification" making the statute general rather than special, relies on the cases of Clark v. State, 169 Miss. 369, 152 So. 820 (1934), and State ex rel. Knox v. Speakes, 144 Miss. 125, 109 So. 129 (1926). Clark dealt with a statute regulating the licensing of barbers in the state and was a statewide application. Knox involved the establishment of county courts in the entire State of Mississippi after the necessity of county courts was determined in counties of certain size. It had statewide application. Nowhere in the opinion in either case is there any mention of section 90 of the Mississippi Constitution. We do find in Knox the following statement in regard to special and general statutes:

In determining the question whether an act is a general law or a local or special law, the courts will look to the substance *1115 and practical operation of the law, rather than to its form and phraseology. The constitutional requirement that certain character of laws shall be general and uniform in their operation does not prevent a reasonable classification by the legislature. A law is general in the sense of such a constitutional provision when it applies to and operates uniformly on all members of any class of persons, places, or things requiring legislation peculiar to the particular class dealt with by the law. (Emphasis ours)
Using the above quote from the case relied on by the majority opinion, how can the Legislature or this Court establish how many people a city has to include before it has parking problems? A city of 50,000 with its facilities might need a public garage more than a city of 75,000 or 100,000 with their particular situations. How can we say, as was set out in Knox, that the statute before us "applies to and operates uniformly on all members of any class of persons, places or things, requiring legislation peculiar to the particular class dealt with by law?"
The statute says that one city in the state of 25,000 has a parking problem, one city of 27,000 has a parking problem, and one city of 100,000 or over has a parking problem. The simple question then is: Does this indicate a legislative intent to cure the parking problems in all Mississippi towns and cities? In the same breath, while making the distinction set out above, the statute says that a city of 100,000 people may have a parking problem and necessary relief, but a city of 99,999 people does not have a parking problem? How more "special" can a pronouncement be?
Nowhere in the above two cases relied on by the majority opinion pertaining to classification based on population was a situation even discussed where a person's property used for his livelihood was being taken by eminent domain and then leased or sold to anyone of the taker's choice. Both cases applied uniformly to statewide necessities regarding licenses and courts.
With deference to the majority, it is inescapable that the abstract principle of "population classification" requires an analysis of each individual case and does not serve to make the statute in question a general statute rather than a special statute prohibited by Section 90(r) of the Constitution.
In a recent case decided by this Court the Court had before it a question involving the constitutionality of the make-up of the school district in a county in Mississippi. It so happens that the school district there includes the entire county and is the only county in the state which has gone that route. The statute in that case involved only a county with one school district and with the intersection of Highways 14 and 15 therein. The Court held the later provisions to be unconstitutional but held that the part regarding the county encompassing the entire school district to be a general law rather than a local, private or special law. In its opinion, the Court said:
Absent the provision referring to Highways 14 and 15 intersecting, the statute, which is a general statute, appears to be constitutional. Although Winston County is the only county in which a municipal separate school district encompasses all territory of the county, there are statutory procedures whereby any other county in the state could become similarly situated.
[Since this opinion was published, it is contended that two other counties in the state have similar county-wide school districts as the county involved above.]
Unlike the above pronouncement, the record is clear that no city in the state other than Jackson could increase its population over 100,000 without building many free homes, and then going out in busses, trucks and trains and hauling people in and making citizens out of them by giving them jobs or putting them on welfare. I know this sounds far-fetched, but it is no more farfetched than holding that the statute in question regarding "population classification" applies to any city other than Jackson.
As stated at the outset, the constitutionality of the statute under which appellees' *1116 property is being taken away from them is doubly important. The statute provides that in connection with the parking facility, paid for by the taxpayers, the city may build commercial enterprise locations right in the same location where appellees' property is being taken and rent those locations to others for their livelihood and that of their families rather than appellees. This is contradictory to Code section 21-37-23, passed many years ago, which authorized municipalities to build parking facilities on property secured or owned by them. The statute, however, further provides that "no commercial enterprise activities other than the parking of motor vehicles shall be authorized by any municipality on the property comprising any part of such parking facility."
This obviously is contradictory to the special statute under which appellees' property is being taken. The record shows that the City of Jackson, more than three years past, enacted an ordinance expressly finding that the commercial enterprise activities should be built and conducted on the same location as appellees' property. Therefore, we have a situation under the majority opinion that appellees' livelihood property may be taken with the expense in connection therewith and that the city then may rebuild at taxpayers' expense another commercial building on the same spot and rent it to others.
In writing this opinion, I would prefer to confine it to the Mississippi Constitution. Simple study reveals, however, that the United States Constitution also is applicable. The Fourteenth Amendment to that Constitution provides in part:
No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. (Emphasis ours)
It appears clear that Code section 43-35-201 with which we are involved violates the "equal protection of the laws" provision of the Fourteenth Amendment. First, it permits urban renewal agencies in only four municipalities to take a citizen's property for parking facilities, and goes further by setting up a scheme of taking a citizen's personal property and making it government-owned property to be used commercially by others. In other words, there are two standards: The citizens of four cities in question may be relieved of their livelihood and this property may be given to others. But the citizens of all other towns and cities are not subject to this exposure. Undoubtedly, the eminent domain rights given in the statute in question under which the suits were filed do not give "equal protection" to all citizens of our state as required by the Fourteenth Amendment.
One phase of the case was not mentioned in the majority opinion; that is, this whole matter arose in connection with "urban renewal." One of the principal cases relied upon by the majority opinion is Paulk v. Housing Authority of City of Tupelo, 195 So.2d 488 (Miss. 1967). In that case it is clear that the city was attempting to clear a "slum area" and the case filed by the city was for that purpose. The petitions filed in the case before us were based solely on "building a parking facility." Paulk did not involve going businesses being properly conducted by persons earning a livelihood and not wishing to have their property taken in order to build parking facilities for employees of a new Federal building.
In my humble opinion, the majority opinion of the Court has bent the Constitution to the breaking point. I certainly agree with some advocates that there should be amendments to the Constitution, and possibly a complete revision. However, I do not recall anyone disagreeing with the intent of the framers of the Constitution when they wisely incorporated therein section 90. I would affirm the case both on the lower court's holding that the petitions were not approved by a quorum of the Authority, and in addition thereto that the statute under which the petitions were filed is unconstitutional.
SMITH and ROBERTSON, P. JJ., join in this opinion.
NOTES
[1] Sections 43-35-201  XX-XX-XXX Mississippi Code Annotated (Supp. 1977).
[2] Sections 43-35-221  XX-XX-XXX Mississippi Code Annotated (Supp. 1977).
[3] Sections 43-35-231, 233, 235 Mississippi Code Annotated (Supp. 1977).
[4] Joslin Mfg. Co. v. City of Providence, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167 (1923).