# IN THE COURT OF APPEALS 10/29/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 94-CA-00434 COA

**INNER-OFFICE, INC.**

**APPELLANT**

**v.**

**CITY OF JACKSON, MISSISSIPPI**

**APPELLEE**


THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B


TRIAL JUDGE: HON. WILLIAM F. COLEMAN

COURT FROM WHICH APPEALED: HINDS COUNTY CIRCUIT COURT

ATTORNEYS FOR APPELLANT:

DAVID W. MOCKBEE

WILLIAM F. SELPH, III

ATTORNEY FOR APPELLEE:

OFFICE OF THE CITY ATTORNEY

BY: SARAH O'REILLY-EVANS

NATURE OF THE CASE: PUBLIC BID APPEAL

TRIAL COURT DISPOSITION: CITY COUNCIL REJECTION OF BID PROTEST AFFIRMED


BEFORE THOMAS, P.J., KING, AND SOUTHWICK, JJ.

SOUTHWICK, J., FOR THE COURT:

Inner-Office, an office supply company, attempted to bid on a contract to furnish an office building. The project was being offered for bid by the Jackson Redevelopment Authority (J.R.A.); J.R.A. is not a party to this litigation. Inner-Office's bid, for reasons that are blamed on J.R.A, was received late and was not opened. The company then took its complaints to a meeting of the Jackson City Council. The City under authority of a state statute had delegated its redevelopment authority to the J.R.A. After the City would not take the requested action, Inner-Office appealed the City's inaction to circuit court. Inner-Office now appeals from the circuit court's affirmance of the city council's actions. Because the City of Jackson was not the proper party against whom to seek this relief, we affirm.

## FACTS

The City of Jackson delegated its community revitalization authority under Mississippi's urban renewal laws to the J.R.A. *See* Miss. Code Ann. § 45-35-31(a) (1972). Among other projects undertaken by the J.R.A. was the rehabilitation of a property known as the Barnett Building located in downtown Jackson. As a part of the Barnett Building project, the J.R.A. solicited bids to provide office furnishings. In its request for bids, the J.R.A. required all bids to be submitted by 2:00 P.M. on October 26, 1993 at its offices in the J.R.A. Building in Jackson.

Inner-Office sought to submit a bid for the project. A representative of the company made an effort to locate the J.R.A. office where the bids were to be submitted, but was initially unsuccessful. The notice inviting bids had not indicated what room at the J.R.A. Building was the place to submit bids. The Inner-Office representative found the City's purchasing department, which has offices in that building. Mistakenly believing that the City could receive bids for the J.R.A., the Inner-Office representative gave her bid to the department. An employee of that department took the Inner-Office representative across the street to City Hall where they made an attempt to locate a City bid opening. The Inner-Office representative finally located the bid room back at the J.R.A. Building, but after other bids had already been opened. J.R.A. refused to open Inner-Office's bid and that of another company that also had failed to find the proper room. That other company is not a party here.

Inner-Office protested the J.R.A.'s decision, but J.R.A. remained firm in refusing to consider Inner-Office's bid. As a part of its protest, Inner-Office raised both the issue of excuse for the late submission of its bid as well as issues regarding the responsiveness of the prevailing bid. Inner-Office necessarily raises the latter issue because it admits than the accepted bid was lower than its own. If the accepted bid was valid, Inner-Office's complaints are academic. The J.R.A., under the terms of a contract with the City, submitted to the City Council a notice of its intent to award the furnishings contract to other bidders. Under the agreement, the City had the opportunity to require the J.R.A. to reconsider its decision, or, if the City took no action, the J.R.A. could proceed with awarding the project. Despite Inner-Office's presentation of its complaints to a meeting of the City Council, the City took no action. J.R.A. then awarded the contract.

Inner-Office sought review of the City's inaction by appealing to Hinds County Circuit Court. Under the appropriate statute, a bill of exceptions was prepared by the City that constituted the record for appellate review. The appeals before the circuit court and this court do not include J.R.A. as a party.

The circuit court concluded that the City's decision and J.R.A.'s actions were neither arbitrary nor capricious and denied Inner-Office's appeal.

DISCUSSION

We start by acknowledging the lack of clarity in some areas of Mississippi public bidding law. There is a novel procedural question raised here, a question that had to be answered by Inner-Office in the first instance. The answer we provide is different than the one the company reached. Our interpretation of the relevant statutes and case law compels this result, but we are cognizant of the difficulties faced by parties in sorting out their rights under Mississippi's present blend of law in this area.

One point is dispositive. The Jackson Redevelopment Authority is a separate and independent governmental entity, whose potential procedural errors in bidding this project cannot be challenged by an appeal in which only the City of Jackson is present. Even if the City's failure to veto the proposed contract was an act for which appellate review was proper, the issues that could be addressed in such an appeal -- and this is that appeal -- are quite limited. Inner-Office did not seek to have the actions of the J.R.A. tested by appealing directly from that agency. Inner-Office has taken the position that the J.R.A. is a department or lesser creature of the City of Jackson, and all of J.R.A.'s actions are to be challenged by appeals from the city council.

We are pointed to no authority by which the City, after delegating its urban renewal powers to J.R.A., has continuing oversight and general veto of J.R.A.'s action. The only involvement of the City here arises from the fact that a contract, which appears in the record, was entered between the City and the J.R.A. regarding the renovation and furnishing of the Barnett Building. That agreement provides that the City is to be given notice of an intent by J.R.A. to accept a bid for furnishings. The City may give notice within fifteen days that it disapproves of the proposed contract. If no such notice is given, the J.R.A. may proceed. It is the failure to reject the contract, as opposed to any affirmative action by the City, that is the focus of Inner-Office's complaint here.

The only authority that the City had under this contract was to approve or disapprove the proposal on which J.R.A. desired to act. This City of Jackson-J.R.A. contract was between two governmental entities, which imposed no specific obligations on the City. The purpose of this provision appears to be mainly one of notification so that the City can be aware exactly what is to be done to its building prior to the furnishings contract being executed.

Inner-Office appealed the City's failure to act by using the provisions of Mississippi Code Section 11-51-75 (1972). That statute states a person "aggrieved by judgment or decision of. . . . municipal authorities . . . may appeal within ten (10) days . . ." from the session in which the action was taken. Miss. Code Ann. § 11-51-75 (1972). A court after review may reverse the City's decision and order the proper judgment to be entered. The only action by the City of Jackson that was taken was to refuse to veto a proposed contract. There is nothing in the contract between the J.R.A. and the City, nor in case law that we have discovered, that would make Inner-Office a third party beneficiary of that agreement. Whether the City was satisfied with the furnishings contract is not a matter that can be tested by judicial review. The reasons Inner-Office wanted the contract to be rejected go solely to alleged improprieties in the contract of the J.R.A. The City, once having fully delegated its urban renewal authority to J.R.A., has no independent statutory or other obligation to make certain of

J.R.A.'s compliance with all procedural requirements. The City's contractual right to decide whether J.R.A.'s proposal is satisfactory for the City's purposes cannot be transformed into an obligation to examine briefs, legal arguments, and fact affidavits from dissatisfied bidders. In other words, the City is not a court to review claims regarding the J.R.A. The judiciary provides that function.

Inner-Office contests this view by saying that the J.R.A. is not a governing body that has free standing status. We are cited to *Robinson v. Utility Commissioners*, 487 So. 2d 827, 829 (Miss. 1986):

> Boa
> ans\
> men
> orde

The court said it could not decipher "the exact status of the Utilities Commission . . . ." *Id.* It concluded that appeals of grievances of a utility commission employee "must be from an order of the municipal authorities approving or denying action of a board or commission." *Id.* The court held that a "municipal authority" under this appeal statute "mean the mayor and board of alderman, city council, or other such form of government." *Id.*

Had no contract right of notification and possible veto been retained, then the City would have had no discretion in any form to exercise. Since the City retained only this limited right to be notified and veto, a court cannot mandate that it do more. Insofar as the limited retained rights are concerned, without judicially manageable standards governing the City's discretion, there is nothing for us to review. Any obligation the City might have to third parties must arise independently of the City-J.R.A. contract for renovating the Barnett building.

What in substance Inner-Office argues is that the underlying agreement for the renovation is not the sole source of J.R.A.-City involvement. There must be oversight of J.R.A. by the City, a view that flows inexorably from Inner-Office's comparing J.R.A. to the utility commission in *Robinson*. However, we simply cannot find that the J.R.A. is a department such as *Robinson* is discussing. As the court said, the kind of board it meant was one "answerable to some higher authority," namely, the City. *Id.* Under state statute, the J.R.A. is a "public body corporate and politic . . . " Miss. Code Ann. § 43-35-33(a) (Supp. 1996). The powers of the J.R.A. are exercised by the commissioners of that agency, and all urban renewal powers reside in the J.R.A. *Id.* § 43-35-33(c). The agency, when delegated all urban renewal authority, has the power "to make and execute contracts and other instruments necessary or convenient to the exercise of its powers. . . ." *Id.* § 43-35-15(a) & 31(a) (Rev. 1993).

There is no statute nor case law that then requires that these contracts be approved by the City. We cannot create such a route for approval when there is not even a hint from any statutory language regarding the need for that approval. If in fact the City retained some general oversight, that City ordinance or limited delegation has not been cited to us.

Though not dispositive, we find instructive that the supreme court on at least two occasions has

found the J.R.A. to be a legal entity entitled to exercise urban renewal authority, including eminent domain powers. *Morley v. Jackson Redev. Auth.*, 632 So. 2d 1284, 1290 (Miss. 1994); *Jackson Redevelopment Authority v. King, Inc.*, 364 So. 2d 1104, 1110 (Miss. 1978) . No limits on J.R.A.'s independence were referenced in those cases. Inner-Office's argument would suggest that even in these eminent domain decisions, the City must formally approve J.R.A's condemnation. J.R.A. took significant action in these cases, including condemning such downtown property as the King Edward Hotel at a price far in excess of the contract at issue in our case. Yet from the opinions of the Court in those condemnation cases, and from a review of the statute, formal City approval is not required before the J.R.A. exercises its eminent domain authority.

J.R.A. is not a board "answerable to some higher authority" within the municipal government. The fact that some agencies operating on behalf of the City may require city council final approval, does not mean that all agencies to which some of the City's powers have been delegated fall under the *Robinson* criteria. We find that the actions of the J.R.A. do not need to have final approval by the City, nor is the proper way to test the J.R.A.'s actions to appeal to the City Council and then to circuit court. There was nothing arbitrary nor capricious about the City's non-action, and the circuit court properly so found.

We need not determine for purposes of this case whether the J.R.A. is a "municipal" authority" from which appeal can be taken under Section 11-51-75. Such a decision would be advisory only. If Section 11-51-75 is not available, then certiorari may be sought under Mississippi Code Section 11-51-95. That section allows certiorari to "all tribunals inferior to the Circuit Court." That latter section is the "catch all" appellate procedure that provides a means

> to review the judgments of all tribunals inferior to the Circuit Court, whether an appeal be provided by law from the judgment sought to be reviewed or not.

Miss. Code Ann. § 11-51-95 (1972).

In addition, there are statutory procedures for suit directly against the officials involved with an allegedly defective bid process. The statute declares that the individual members of a governing body who cause

> any public funds to be expended, any contract made or let, . . . in any manner whatsoever, contrary to or without complying with any statute of the State of Mississippi, regulating or prescribing the manner in which such contracts shall be let, . . . shall be liable, individually and upon their official bond, for compensatory damages, in such sum as will fully and completely compensate and repay such public funds for any actual loss caused by such unlawful expenditure.

Miss. Code Ann. § 31-7-57 (3) (Supp. 1996). This statute has been interpreted by the supreme court even to permit the cancelling of the awarded contract, and the rebidding of a project. *See*, *e.g.*, *Richardson v. Canton Farm Equip., Inc.*, 608 So. 2d 1240, 1247-52 (Miss. 1992).

We find the City was within its discretion when it refused to veto J.R.A.'s proposed contract. That is the only question before us. We do not address the validity of J.R.A.'s bid process.

**THE APPEAL OF THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT FOR THE FIRST JUDICIAL DISTRICT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT, INNER-OFFICE, INC.**

**FRAISER, C.J., BRIDGES AND THOMAS, P.JJ., BARBER, COLEMAN, DIAZ, KING, McMILLIN, AND PAYNE, JJ., CONCUR.**