KING, C.J.,
for the Court.
¶ 1. Willie George Knight and Ellen D. Knight (the Knights) appeal the judgment of the Covington County Circuit Court, sitting as a Special Court of Eminent Domain, condemning a portion of their property for a right-of-way and easement for the construction, maintenance, and operation of an electric transmission line system. Finding no error, we affirm.
FACTS
¶2. South Mississippi Electric Power Association (SMEPA) is a non-profit, rural electrical co-op which has eleven distribution co-op members to whom it provides electricity. The distribution co-ops, in turn, provide electricity to residential and commercial customers. Southern Pine *83 Electric Power Association (Southern Pine) is the SMEPA member which provides electricity to Covington County, as well as ten other counties in the region. Southern Pine’s North Collins substation provides electricity to approximately 1,900 customers. An analysis of the transmission system revealed that the North Collins substation was providing below adequate voltage to its consumers.[1] As a result, on April 1, 1997, SMEPA filed for a certificate of convenience and necessity with the Mississippi Public Service Commission (PSC) to construct a 69 kilovolt power line, Line 104, in the North Collins area in order to provide adequate voltage to its customers. The proposed line would run approximately five miles from Station Creek substation to Southern Pine’s North Collins substation. Notice of the filed petition and the pending PSC hearing was published in The Clariortr-Ledger, a newspaper of general circulation published in Jackson, Mississippi, and in The News-Commercial, a newspaper of general circulation in Covington County, Mississippi. The PSC notice appeared as follows:
MISSISSIPPI PUBLIC SERVICE COMMISSION
Jackson, Mississippi
April 01, 1997
1997-UA-188
SOUTH MISSISSIPPI EPA
EA123075000
In Re: Petition of South Mississippi Electrical Power Association For Certificate Of Public Convenience and Necessity Authorizing Them To Acquire, Construct, Own and Operate Electrical Transmission Facilities In Covington County, Mississippi (Station Creek-North Collins)
Notice
Notice is hereby given that on the 1st day of April, 1997, South Mississippi EPA filed with the Mississippi Public Service Commission the above referenced matter.
Any person desiring to participate in or receive further notice of these proceedings is required under Rule 6J of the Commissions Public Utility Rules of Practice and Procedure to file a written petition to intervene on or before twenty (20) days from the date of this notice.
This cause is returnable to the next regular meeting of the Commission to be held at 10:00 A.M., Tuesday, the 6th day of May, 1997, at the Mississippi Public Service Commission, 19th Floor, Walter Sillers State Office Building, Jackson, Mississippi. This cause may be heard on said return date, if a hearing is necessary, or be subject to being set for disposition on a hearing date not less than twenty (20) days from the date of publication of this Notice. If protest, answer or other appropriate pleading is on file in response to this matter, the Commission will consider same on said hearing date.
WITNESS MY HAND AND THE OFFICIAL SEAL of the Mississippi Public Service Commission, on this, the 1st day of April, 1997.
Brian U. Ray
Executive Secretary
(Seal)
1 Time: April 9,1997
*84 ¶ 3. On May 6, 1997, the PSC held a hearing on SMEPA’s petition for a certificate of public convenience and necessity. No objections to the granting of the certificate had been filed. The PSC found that public convenience and necessity required the award of the certificate, and ordered that the certificate be granted to SMEPA. After having been awarded the certificate of public convenience and necessity, SME-PA engineers began drawing construction plans for Line 104. Thereafter, Larry Griffin, SMEPA Director of Land, began negotiations with landowners to obtain rights-of-way for Line 104. By January 21, 2000, SMEPA had obtained a right-of-way from all landowners on whose property Line 104 would run except the Knights. On January 21, 2000, SMEPA filed in the Covington County Circuit Court an application for a condemnation hearing before a special court of eminent domain. On January 22, 2000, the court granted SMEPA’s petition, and set a trial date for May 22, 2000.
¶ 4. On March 20, 2000, the Knights filed a motion to dismiss the eminent domain proceeding, alleging that (1) they had not been provided reasonable notice of the PSC hearing in which the certificate of public convenience and necessity was granted, (2) the condemnation of their property was for private, rather than public, use, and (3) no public necessity existed for the taking of the their property. A hearing on the motion to dismiss was held on June 9 and June 14, 2000. On June 14, 2000, the court denied the Knights’ motion to dismiss. On July 12, 2000, the Knights filed a motion in the circuit court seeking permission to file an interlocutory appeal. On September 19, 2000, the court denied certification. The case proceeded to trial, and on September 10, 2004, the court ordered the portion of the Knights’ property in question to be condemned in order for SMEPA to construct, maintain, and operate Line 104. The court also entered a verdict setting the Knights’ compensation at $7,410.50.
ANALYSIS
¶ 5. This Court reviews motions to dismiss eminent domain proceedings to determine “whether or not the trial judge had sufficient basis to dismiss the condemnation petitions.” Mayor of Vicksburg v. Thomas, 645 So.2d 940, 941-42 (Miss.1994) (quoting Am. Tel. and Tel. Co. v. Purcell Co., 606 So.2d 93, 96 (Miss.1990)). Mississippi Code Annotated Section 11-27-15 (Rev.2004) provides three grounds for dismissal of an eminent domain action:
(1) that the plaintiff seeking to exercise the right of eminent domain is not, in character, such a corporation, association, district or other legal entity as is entitled to the right; (2) that there is no public necessity for the taking of the particular property or a part thereof which it is proposed to condemn; or (3) that the contemplated use alleged to be a public use is not in law a public use for which private property may be taken or damaged.
¶ 6. The Knights’ first issue on appeal is whether they received proper notice regarding SMEPA’s certificate of convenience and necessity hearing before the PSC. However, the Knights’ attorney stipulated that SMEPA had complied with both the statutory notice requirement as well as SMEPA’s procedural rules regarding notice. Therefore, this claim is barred from review. We now consider whether the trial court erred in denying the Knights’ motion to dismiss.

Public Use

¶ 7. Whether a taking is for public use is a judicial question. Mayor of Vicksburg, 645 So.2d at 942. The condem- *85 nor has the burden of proving that the taking is for public use. Id. The Knights argue that the route of Line 104 through their property is not for public use and was arbitrarily selected by SMEPA. The Knights argue that the taking of their land was for private use to benefit surrounding landowners who negotiated with SMEPA to not have Line 104 run on their properties. The Knights’ assertion fails for two reasons. First, we have previously held that, “if the primary and paramount purpose of the taking is for public use ... it will not be defeated because some incidental private benefit or use results.” Winters v. City of Columbus, 735 So.2d 1104, 1108(¶ 14) (Miss.Ct.App.1999) (quoting Pearl River Valley Water Supply Dist. v. Brown, 248 Miss. 4, 19, 156 So.2d 572, 577 (1963)). At trial, it was established that Line 104 was being constructed in order for Southern Pine to provide approximately 2,000 customers with adequate power. SMEPA engineers testified that low voltage will cause its customers’ air conditioner, refrigerator, and other household appliance motors to fail. By the time of trial, SMEPA had already received numerous telephone calls from customers complaining of flickering lights and other low voltage conditions. Sanderson Farms, one of Southern Pine’s customers, had to stop production for thirty minutes due to the low voltage situation. We find that substantial testimony adduced at trial established that the taking was for public use. Therefore, any incidental benefit to surrounding landowners would not defeat the taking of the Knights’ property.
¶ 8. Secondly, Griffin testified that when he negotiates easements with landowners, if the landowner can propose an alternate route across his property, and if that alternate route is feasible and will not affect other landowners, he then takes that proposal to the SMEPA engineers responsible for determining the exact location of the route. Griffin further testified that although he negotiated with two of the Knights’ neighbors to move the location of the proposed route on their properties, this modification in no way affected the position of the route on the Knights’ property. This testimony was substantiated by Jerry Pierce, SMEPA’s manager of transmission who was responsible for determining the location of the route, who testified that the change in route negotiated by the Knights’ neighbors did not change the way the route was designed to run across the Knights’ property. Accordingly, we find that the trial court was correct in finding that Line 104 was for public use.

Public Necessity

¶ 9. While public use is a judicial determination, public necessity is determined by the condemning authority exercising its power of eminent domain conferred by the legislature. St. Andrew’s Episcopal Day Sch. v. Miss. Transp. Comm’n, 806 So.2d 1105, 1111(¶ 18) (Miss. 2002) (citing Jackson Redevelopment Auth. v. King, Inc., 364 So.2d 1104, 1110 (Miss.1978)). Mississippi Code Annotated Sections 11-27-47 (Rev.2004) and 77-5-231 (Rev.2000) authorize SMEPA to exercise the power of eminent domain. The condemning authority’s determination of public necessity will only be disturbed where the landowner can prove fraud or abuse of discretion. St. Andrew’s, 806 So.2d at llll(eiting Morley v. Jackson Redevelopment Auth., 632 So.2d 1284, 1288 (Miss.1994)).
¶ 10. The Knights have never asserted that SMEPA committed fraud in determining the public necessity of Line 104. Rather, the Knights insist that SMEPA abused its discretion, as illustrated by the lack of feasibility and economic considerations in determining the route of Line 104. The Knights insist that the most *86 economically feasible route would have been a straight line. However, evidence produced at trial showed that a straight line route would require taking more of the Knights’ property. Currently, Line 104 crosses the perimeter of the Knights’ property, whereas a straight line cuts through the middle of the property. Furthermore, SMEPA engineers justified Line 104’s route, testifying that the route was chosen to avoid environmentally sensitive spots, residences, churches, schools, and other utilities. Since the Knights were unable to prove that SMEPA committed fraud or abused its discretion in determining the public necessity of Line 104, this issue fails.
¶11. THE JUDGMENT OF THE COVINGTON COUNTY CIRCUIT COURT SITTING AS A SPECIAL COURT OF EMINENT DOMAIN IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.

. SMEPA is required to provide between 95 to 100 percent voltage to each substation during normal system conditions, and between 90 to 105 percent voltage during outage conditions. At the time of trial, SMEPA was providing the North Collins substation with only 85 percent voltage.