# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00741-COA

**PEGGY J. STURDIVANT**                                                                 **APPELLANT**

**v.**

**COAHOMA COUNTY, MISSISSIPPI**                                          **APPELLEE**

DATE OF JUDGMENT:                   03/21/2019
TRIAL JUDGE:                               HON. LINDA F. COLEMAN
COURT FROM WHICH APPEALED:   COAHOMA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        JOHN KEVIN CAVENDER
ATTORNEY FOR APPELLEE:          ROY JEFFERSON ALLEN
NATURE OF THE CASE:               CIVIL - OTHER
DISPOSITION:                           AFFIRMED - 09/15/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., McDONALD AND McCARTY, JJ.

### McDONALD, J., FOR THE COURT:

¶1.     This appeal involves an inverse condemnation claim arising from Coahoma County's destruction of water lines to, but not on, Peggy Sturdivant's property during a road repair. Sturdivant appeals from the Coahoma County Circuit Court's order granting summary judgment in favor of Coahoma County, in which the court found that (1) Sturdivant's own property management choices prevented her from discovering the damaged water lines within the three-year statute of limitations; and (2) Sturdivant's injury (damaged water lines) was not a latent injury that would have extended the limitations period under the "discovery rule." On appeal, Sturdivant argues that the circuit court erred in finding that the three-year statute of limitations barred her inverse condemnation claim. Finding no error, we affirm.

## Facts and Procedural History

¶2. Peggy Sturdivant, a lifelong-resident of Los Angeles, California, came to Mississippi in search of property. In 2000, Sturdivant entered into a rental agreement for a commercial building located at the intersection of Highway 61 and Highway 316 in Coahoma County, Mississippi. In May 2000, Sturdivant purchased the property and operated a club, Big Lou's House of Blues, with her sister-in-law, Carol Pegues, until 2004. Moore Bayou Water Association (Moore Bayou) is a nonprofit corporation that was authorized by the Mississippi Public Service Commission to provide water service to the property. Some of Moore Bayou's water lines ran along Highway 61.

¶3. In 2005, Sturdivant reopened her club as Showtime Inc. On October 4, 2005, through Showtime, Sturdivant entered into a water user's agreement with Moore Bayou to supply water to the property. Showtime paid a membership fee to the water association in the amount of $135.41, and Moore Bayou began providing water to the property. However, after several months, the account became delinquent and had an outstanding balance of $104.46. As a result, the water services and the membership were terminated. Shortly after, Moore Bayou issued Showtime a refund check of $30.95. The check, dated June 14, 2006, was later negotiated by Sturdivant. On July 5, 2006, the check cleared through Moore Bayou's bank account. Clearly, Showtime had ceased its operation, and at some point, Sturdivant returned to California.

¶4. While Sturdivant was in California, in 2007, Coahoma County and the Mississippi Department of Transportation (MDOT) began a road-widening project on Highway 316.

2

During the project, on several dates in August, Coahoma County struck and damaged Moore Bayou's underground water lines in several places along Highway 3l6, including the water line that provided water to Sturdivant's property. The damaged water line was located on the County's right of way, which was about a mile and a half from Sturdivant's property.[1] On November 12, 2007, Moore Bayou concluded that it would be too expensive to replace the water lines by itself and decided to leave the lines in the damaged condition. Instead, Moore Bayou and Coahoma County each paid property owners that were currently receiving water a portion of the cost for them to replace their damaged water lines. However, because there were no water customers at the time the water lines were damaged on or close to Highway 61, where Sturdivant's property was, no water lines were ever replaced. Neither Moore Bayou nor the County notified Sturdivant of the damaged water lines or decision not to repair them because she was no longer a member or a serviced customer.

¶5. In 2009, Sturdivant returned to Mississippi and began renovations to her property in hopes of opening a restaurant. She hired a contractor and spent $150,000, expanding the building from a 40 by 60 foot structure to a 90 by 40 foot structure. In August 2010, Sturdivant stated that as she was preparing to reopen, she contacted Moore Bayou to obtain water service. She was then informed that the underground water lines had been damaged in the course of widening the road, rendering the property incapable of receiving water. Moore Bayou told Sturdivant that she would have to pay $33,204 to install a new water line.

---

[1] Although no specific date was mentioned, the record indicates the water lines were damaged prior to August 14, 2007, because Moore Bayou held a board meeting on that day during which the damaged water lines were discussed.

¶6.    According to Sturdivant, from 2007 to 2009, she only visited the property once because she had to return to Los Angeles to get more funding for her restaurant. Even after her return in 2009, Sturdivant maintained that she did not have to go into the building because she first focused on the additional structure expansion. For these reasons, she did not learn her property could not receive water until 2010.

### A.    First Lawsuit

¶7.    On September 1, 2010, Sturdivant filed a complaint against Moore Bayou, Coahoma County and Mississippi Department of Transportation (MDOT) in the Coahoma County Circuit Court (Cause No. 2012-CA-000717).[2] After MDOT was voluntarily dismissed,[3] Moore Bayou filed a motion for summary judgment, which was granted.[4] Coahoma County was the only remaining defendant to the suit. Sturdivant alleged only an inverse condemnation claim against Coahoma County. After filing suit on September 24, 2010, Sturdivant sent a notice-of-claim letter to Coahoma County. However, she did not serve process on Coahoma County until April 19, 2011.

¶8.    On January 16, 2012, Coahoma County filed a motion to dismiss because Sturdivant failed to timely serve process within the 120-day limit as required by Rule 4(h) of the

---

[2] Sturdivant alleged that Moore Bayou negligently failed to install a new water line to her property and breached their contract by terminating the water service without notice. Sturdivant alleged an inverse condemnation claim against Coahoma County and MDOT.

[3] During discovery, Sturdivant learned that MDOT was not involved in the water lines' damage.

[4] The circuit court found (1) that there was no evidence supporting any claim for negligence against Moore Bayou and (2) that the contract between Moore Bayou and Sturdivant had been terminated.

4

Mississippi Rules of Civil Procedure. Finding that Sturdivant failed to show good cause for her delay in serving the County within the time limit, the circuit court granted the motion and dismissed the case on March 29, 2012. Because the service-of-process issue was dispositive of the case, the court declined to consider whether the limitations period had expired regarding Sturdivant's inverse condemnation claim.

¶9.     Sturdivant appealed the matter, and this court affirmed the circuit court's holding on August 13, 2013, finding the circuit court did not abuse its discretion in determining that Sturdivant had not shown good cause for her failure to timely serve process on Coahoma County. *Sturdivant v. Moore Bayou Water Ass'n Inc.*, 130 So. 3d 1152, 1157-58 (¶14) (Miss. Ct. App. 2013). Therefore, we found the grant of Coahoma County's motion to dismiss was proper.

### B.     Second Lawsuit

¶10.    Prior to our decision in the first suit, Sturdivant filed a second complaint against Coahoma County on July 20, 2012. She pleaded claims for negligence and inverse condemnation. She alleged that Coahoma County was negligent because the County destroyed the water lines and had a duty to repair them. Additionally, Sturdivant alleged that Coahoma County had inversely condemned her private property for public use by destroying her water lines. Sturdivant alleged that she suffered damages in the amount of $70,000 for loss of value of property, lost profits, and lost business opportunities.

¶11.    Coahoma County filed a motion to dismiss on June 23, 2014. On September 18, 2015, the circuit court dismissed the negligence claim because the case was not filed within the

one-year limitations period set by the Mississippi Torts Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 to -23 (Rev. 2019).[5] But the circuit court denied the motion to dismiss on the inverse condemnation claim, finding that a jury should determine whether the statute of limitations period had run. The case proceeded through pre-trial discovery.

¶12. On January 15, 2019, Coahoma County filed a motion for summary judgment on Sturdivant's inverse condemnation claim, arguing (1) that the matter was untimely filed; (2) that there was no taking of any property owned by Sturdivant for use by the public; (3) that if any property of Sturdivant was taken, it was not taken by Coahoma County; and (4) that Sturdivant lacked standing to present the claim. Sturdivant responded to the motion on February 14, 2019.

¶13. After a hearing, the circuit court granted Coahoma County's motion for summary judgment on March 21, 2019. The court found that it was Sturdivant's property management choices that prevented her from reasonably discovering that the water lines to her property were damaged within the three-year statutory limitations period from the date of the damage in 2007. Furthermore, the circuit court found that Sturdivant's injury was not a latent injury, making the "discovery rule," which would have extended the limitations period, inapplicable. Therefore, Sturdivant's claim was barred by the statute of limitations.

¶14. On April 17, 2019, Sturdivant appealed the sole issue of whether the circuit court erred in finding that the three-year statute of limitations barred her inverse condemnation

---

[5] Under the MTCA, "[a]ll actions brought under the provisions of this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based." Miss. Code Ann. § 11-46-11.

6

claim.[6]

## Standard of Review

¶15.    "An appellate court conducts a de novo standard of review when considering a lower court's grant of summary judgment." *Howard v. Rolin Enters. LLC*, 284 So. 3d 772, 775 (¶5) (Miss. Ct. App. 2019) (quoting *Levens v. Campbell*, 733 So. 2d 753, 757 (¶10) (Miss. 1999)). "This entails reviewing all the evidentiary matters before it in the light most favorable to the party against whom the motion has been made." *Id.* "If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should be affirmed; otherwise, it should be reversed." *Id.*

## Discussion

¶16.    The circuit court granted summary judgment for Coahoma County, finding as a matter of law that the limitations period had run on Sturdivant's inverse condemnation claim. "If the moving party is entitled to judgment as a matter of law, summary judgment should be entered in the moving party's favor." *Pearl River Cnty. Bd. of Supervisors v. Miss. State Bd. of Educ.*, 289 So. 3d 301, 305 (¶8) (Miss. 2020) (quoting *Clarksdale Mun. Sch. Dist. v. State*, 233 So. 3d 299, 303 (¶11) (Miss. 2017)). "The movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, [h]e is entitled to a judgment as a matter of law." *Anderson v. Wiggins*, No. 2017-CT-00607-SCT, 2020 WL 830767, at *3 (¶9) (Miss. Feb. 20, 2020). The circuit court found that Coahoma County met that burden, and Sturdivant appeals. In order to address the

_____

[6] Sturdivant did not appeal the dismissal of her negligence claim.

7

statute of limitations issue, on which the circuit court based its decision, we must first determine if Sturdivant had a viable inverse condemnation claim.

¶17. The Mississippi Constitution provides the foundation for inverse condemnation claims:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

Miss. Const., art. Ill, § 17.

¶18. An inverse condemnation claim involves (1) a property owner seeking (2) compensation for (3) a private property taken for public use (4) without proper condemnation proceedings. *State v. Murphy*, 202 So. 3d 1243, 1251 (¶15) (Miss. 2016). Ordinarily, the government pays just compensation when the government acquires or "take[s]" private property for public use. *Id.* However, when "an action or eminent domain proceeding [is] initiated by the property owner, rather than the condemnor[, the government]," this claim is known as one for inverse condemnation. *Id.* (quoting *Jackson Mun. Airport Auth. v. Wright*, 232 So. 2d 709, 713 (Miss. 1970)). But "[n]ot every tort committed by governmental entity that results in property damage gives rise to an action in inverse condemnation." *Kelley LLC v. Corinth Pub. Utils. Comm'n*, 200 So. 3d 1107, 1118 (¶30) (Miss. Ct. App. 2016) (quoting *Air Quality Prods. Inc. v. State*, 157 Cal. Rptr. 791, 797 n.7 (Cal. Ct. App. 1979)).[7] "Inverse

---

[7] Kelley filed an inverse condemnation claim against Corinth Gas and Water Department after it installed the water lines on his property at his request for development of a subdivision. *Kelley LLC*, 200 So. 3d at 1111 (¶8). The work caused significant damage

8

condemnation is appropriate only when private property is taken or damaged in respect to public use or use for the public benefit." *Id*.

¶19. An example of a viable inverse condemnation claim was presented in *Murphy*, 202 So. 3d at 1251 (¶15). There, property owners sued the State and City of Bay St. Louis for inverse condemnation after the City constructed a municipal harbor on their property. *Id*. at 1248 (¶1). Specifically, the Murphys alleged that the State and the City had taken their property located seaward (east) of the "Old Seawall." *Id*. at 1250 (¶12). The State argued that the Murphys could not bring an inverse condemnation action because the State, not the Murphys, owned all property east of the Old Seawall. *Id*. After a jury found the State liable to the Murphys, the State appealed. *Id*. The Mississippi Supreme Court found that the State was not entitled to judgment as a matter of law. *Id*. at 1254 (¶26). Therefore, the Supreme Court affirmed the jury's verdict. *Id*. at 1264 (¶55).

¶20. As noted above, one essential element of an inverse condemnation is a "taking" of private property. Sturdivant argues that she has a valid claim against Coahoma County because by depriving her of water service to her property, the County "took" her property for public use. The Mississippi Supreme Court discussed a "taking" in *Ward Gulfport Properties L.P. v. Mississippi State Highway Commission*, 176 So. 3d 789, 791 (¶2) (Miss. 2015). In *Ward*, the Mississippi State Highway Commission (MHC) applied for a permit from the Army Corps of Engineers (ACE) "to fill wetlands in the roadbed of a proposed

_____

to his property. *Id*. After the circuit court ruled that the claim failed as a matter of law, Kelley appealed. *Id*. at 1112 (¶13). We found that Kelley's amended complaint "contain[ed] no plausible allegation that the alleged damage to the property was for any 'public use'" as required in Miss. Const. art. 3, § 17. *Id*. at 1118 (¶30).

9

connector road in the Turkey Creek Watershed near Gulfport." *Id*. at 791 (¶¶1-2). MHC suggested "using approximately 1,300 acres of Ward's property as mitigation property." *Id*. at 791-92 (¶2). The supreme court stated that "[w]hether the permit 'effected a categorical taking depends on if it left plaintiffs without any present or future interest in economically viable use in their parcel as a whole or only diminished the value of their interests.'" *Id*. at 797 (¶25) (quoting *Res. Inv. Inc. v. United States*, 85 Fed. Cl. 447, 484 (2009)). When MHC pledged the property as wetlands mitigation and ACE issued the permit, Ward could no longer make economically viable use of the property. *Id*. at (¶26). "It could not develop it; it could not obtain permits for development; it could not sell it." *Id*. Therefore, MHC's taking for wetlands mitigation became the property's only use. *Id*.

¶21. Here, Sturdivant has not shown a "taking" of any "property" she owned. Moore Bayou owned the damaged water line, not Sturdivant. Moreover, Sturdivant's physical property was not rendered useless. She could still use her land for her restaurant by paying to install a water line as all others had to do. Additionally, Sturdivant had no right to water service because she was not a member of the water association at the time of the damage. Furthermore, even if Sturdivant's property was devalued, the Mississippi Supreme Court has never held that every diminution of value to property is compensable. *Dear v. Madison Cnty. By & Through Madison Cnty. Bd. of Supervisors*, 649 So. 2d 1260, 1261 (Miss. 1995). Therefore, her property was not taken for public use.

¶22. Even if the damaged water line could be constituted as a "taking," a plaintiff such as Sturdivant claiming inverse condemnation must show that the taking of his or her property was for "public use." Public uses include, among other things, the construction of highways

for the use of the motoring public, *Starkville Lodge LLC. v Miss. Trans. Comm'n*, 296 So. 3d 83, 89-90 (¶21) (Miss. Ct. App. 2019), *cert. denied*, 297 So. 3d 1110 (Miss. 2020), construction of a municipal harbor, *Murphy*, 202 So. 3d at 1247 (¶1), construction of public parking facilities, *Jackson Redevelopment Auth. v. King Inc.*, 364 So. 2d 1104, 1113 (Miss. 1978), construction of drainage ditches, *Winters v. City of Columbus*, 735 So. 2d 1104, 1108 (¶14) (Miss. Ct. App. 1999), and construction of electric transmission lines, *Knight v. S. Miss. Elec. Power Ass'n*, 943 So. 2d 81, 85 (¶8) (Miss. Ct. App. 2006).

¶23. Sturdivant does not show that any property she owned was taken for "public use." Sturdivant's access to water for her property does not benefit the public. Further Coahoma County's damage to the water line was not done for any public good. Additionally, she was not a member of the water association and had no right to Moore Bayou's water. Because Sturdivant cannot prove a "taking" of "property" that she owned for "public use," she has no viable inverse condemnation claim.

¶24. Sturdivant's lawsuit included a claim under the MTCA. It may have been viable had the one-year limitations period not run. Although Sturdivant's inverse condemnation claim fails as a viable cause of action, which is dispositive of this case, we agree with the circuit court that her "injury" was not latent and that dismissal on the ground of the statute of limitations was also proper.

¶25. Mississippi Code Annotated section 15-1-49 (Rev. 2019) provides a three-year statute of limitations claims for where no other period is specifically set:

> (1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after. (2) In actions for which no other period of limitation is

11

prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury. (3) The provisions of subsection (2) of this section shall apply to all pending and subsequently filed actions.

¶26. The Code provides no specific statute of limitations for inverse condemnation claims. The Mississippi Supreme Court has held that inverse condemnation claims are subject to the three-year statute of limitations. "Mississippi Code Annotated section 15-1-49 (Rev. 2015) is applicable to such claims which are brought under the Article 3, Section 17, Takings Clause." *City of Tupelo v. O'Callaghan*, 208 So. 3d 556, 568 (¶35) (Miss. 2017).

¶27. The three-year period may be extended if an injury is "latent." A latent injury is an injury "[w]here the plaintiff is 'precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question or when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act.'" *Milam v. Kelly*, 282 So. 3d 682, 688 (¶19) (Miss. Ct. App. 2019) (quoting *Jackson v. Carter*, 23 So. 3d 502, 505 (¶8) (Miss. Ct. App. 2009), *cert. denied*, 289 So. 3d 311 (Miss. 2020)). For example, in *Punzo v. Jackson County*, 861 So. 2d 340 (Miss. 2003), the plaintiff suffered flood damage to his home over a three-year period. *Id*. at 346 (¶20). When Punzo discovered that Jackson County had negligently altered a nearby bridge and that the negligent alteration of the bridge was the cause of the flooding, he filed a complaint against the County.[8] *Id*. at 346 (¶21). The supreme court accordingly held that the discovery rule should apply to Punzo's cause of action because "water flow and flood currents are subjects requiring expert knowledge to fully comprehend." *Id*. at 346 (¶21). It was only after a

---

[8] Instead of filing an inverse condemnation claim, Punzo filed a negligence claim pursuant to the MTCA.

former Jackson County supervisor advised him of the modification to the bridge that he was able to identify the problem and realize that the County was responsible for the flooding. *Id*. at 344 (¶14). The supreme court reversed and remanded partly "because the discovery of a latent injury rule applied to toll the" limitations period. *Id*. at 348 (¶30).

¶28. But where "there is no latent injury, the discovery rule cannot apply." *Raddin v. Manchester Educ. Foundation Inc.*, 175 So. 3d 1243, 1249 (¶15) (Miss. 2015). There is no "bright line rule" as to whether an injury is latent or not; it depends on whether the plaintiff knew or reasonably should have known that an injury existed which in turn depends on the specific facts of the case. *Jackson*, 23 So. 3d at 505 (¶¶7-8). "In determining whether a plaintiff knew or should have reasonably known he had an injury, the court considers the actions taken by the plaintiff." *Milam*, 282 So. 3d at 687 (¶20) (Miss. Ct. App. 2019) (citing *Am. Optical Corp. v. Estate of Rankin*, 227 So. 3d 1062, 1068 (¶23) (Miss. 2017)).

¶29. In this case, Sturdivant's inverse condemnation claim is subject to a three-year statute of limitations. If her "injury" (lack of access to water) is not latent, then the date of the Coahoma County's damage to the water line before August 14, 2007, would trigger the running of the three-year period in which Sturdivant could file her claim. To determine if her injury was latent, we look at Sturdivant's actions to see whether she knew or should have known of her lack of access to water by August 2010. The proof in the record showed that Sturdivant, by her own choice, checked on her property only once between 2006 and 2009. She claims that when she returned sometime in 2009, she did not learn of her lack of access until August 2010. However, it is hard to believe that a reasonable person would spend $150,000 in renovating property without learning at some point in that process that she had

13

no water. We agree with the circuit court that Sturdivant failed to use reasonable diligence to discover her injury and that her injury was not "latent." Therefore, her alleged inverse condemnation claim filed in 2012 is barred by the statute of limitations. Her own undisputed property management decisions caused this failure. The circuit court correctly found that any inverse condemnation claim filed in 2012 was time-barred.

## Conclusion

¶30. Because we find that Sturdivant failed to establish a taking for public use, and because her injury was not latent and was barred by the statute of limitations, we affirm the circuit court's dismissal of her claim.

¶31. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**